| |
|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br>*Caption in Compliance with D.N.J. LBR 9004-1(b)*<br>**SAUL EWING LLP**<br>Stephen B. Ravin, Esquire<br>Turner N. Falk, Esquire<br>One Riverfront Plaza<br>1037 Raymond Blvd., Suite 1520<br>Newark, NJ 07102-5426<br>Telephone: (973) 286-6714<br>E-mail:  stephen.ravin@saul.com<br>            turner.falk@saul.com<br><br>*Proposed Counsel to the Debtors and Debtors in Possession* |

| In re:<br><br>NEW JERSEY ORTHOPAEDIC INSTITUTE LLC, *et al.*,<br><br>                         Debtors.[1] | Chapter 11<br><br>Case No. 25-11370 (JKS)<br><br>(Jointly Administered) |
|---|---|

## MOTION FOR ENTRY OF AN ORDER EXCUSING APPOINTMENT OF PATIENT CARE OMBUDSMAN

New Jersey Orthopaedic Institute LLC and Northlands Orthopaedic Institute LLC (collectively, the "Debtors"), by and through their proposed attorneys, Saul Ewing LLP, hereby present this Motion for Entry of an Order Excusing Appointment of a Patient Care Ombudsman (the "Motion"). In support of the Motion, the Debtors respectfully state as follows:

---

[1] The last four digits of Debtor New Jersey Orthopaedic Institute LLC's tax identification number are 3560; the last four digits of Debtor Northlands Orthopaedic Institute LLC's tax identification number are 9828. The location of both Debtors' principal place of business and the Debtors' service address in these Chapter 11 Cases is 504 Valley Road, Suite 200, Wayne NJ 07470.

55104506.7

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

2. Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b).

3. The statutory predicates for the relief requested herein are 11 U.S.C. § 333(a)(1) and Federal Rule of Bankruptcy Procedure 2007.2(a).

## BACKGROUND

4. On February 10, 2025 (the "Petition Date"), each of the Debtors commenced a case under chapter 11 of the Bankruptcy Code.

5. The Debtors operate out of one location, where both surgical and primary care services are provided.. Surgeons provide services on behalf of Northlands Orthopaedic Institute and claims by surgeons reimbursement are submitted on behalf of Northlands Orthopaedic Institute. Surgeons are, for the most part out-of-network with insurance carriers. Primary care providers provide services on behalf of New Jersey Orthopaedic Institute, which is a subsidiary of Northlands Orthopaedic Institute. Claims by primary care providers are submitted on behalf of New Jersey Orthopaedic Institute. The primary care providers are in-network with most insurance carriers. Note that both Northlands Orthopaedic Institute and New Jersey Orthopaedic Institute accept Medicare. The Debtors routinely receive payment for services from private health insurers and governmental entities for services performed. Together, the Debtors are an orthopaedic and sports medicine practice that provides medical and surgical services to patients. The practice also offers services to numerous local schools, as well as medical coverage during high school football games. As of the Petition Date, the practice has four doctors and one mid-level provider. See the

*Declaration of Kinga Skalska-Dybas pursuant to Section 333 of the Bankruptcy Code* attached hereto (the "Skalska-Dybas Declaration").

6. The instant bankruptcy case was precipitated by a dispute between the Debtors and former doctors that were members of the Debtors. The current members of the Debtors and these departing doctors and associated parties - Anthony Festa, M.D., Anthony Scillia, M.D., Craig Wright, M.D., John Callaghan, M.D., Casey Pierce, M.D., and Academy Orthopaedics LLC (collectively, the "Judgment Plaintiffs") engaged in a contested "business divorce" over the terms of their departure and the financial obligations created thereby.

7. The parties to the dispute engaged in binding arbitration. The arbitral body entered an award, which found substantially in favor of the Judgment Plaintiffs and against the Debtors.

8. The Superior Court of New Jersey Passaic County Chancery Division, General Equity entered an order in *Anthony Festa, M.D., Anthony Scillia, M.D., Craig Wright, M.D., John Callaghan, M.D., Casey Pierce, M.D., and Academy Orthopaedics LLC v. Vincent McInerney, M.D., New Jersey Orthopaedic Institute LLC, and Northlands Orthopaedic Institute LLC*, case no. PAS-C-26-24 in favor of the Judgment Plaintiffs on February 19, 2024.

9. After considering alternatives, and unable to reach an agreement with the Judgment Plaintiffs, the Debtors determined that they must file the instant chapter 11 cases to attempt to save and restructure the business. Through these bankruptcy cases, the Debtors intend to timely file a Plan of Reorganization setting forth the Debtors' means to satisfy their creditors, including the Judgment Plaintiffs, in a manner that is in the best interest of the Debtors and all parties in interest.

55104506.7

## RELIEF REQUESTED

10. By this Motion, the Debtors respectfully request that this Court enter an order excusing them from the requirement to appoint a patient care ombudsman pursuant to 11 U.S.C. § 333(a)(1) and Federal Rule of Bankruptcy Procedure 2007.2(a).

## BASIS FOR RELIEF

11. Section 333(a)(1) of the Bankruptcy Code provides:

> If the debtor . . . is a health care business, the court shall order, not later than 30 days after the commencement of the case, the appointment of an ombudsman to monitor the quality of patient care and to represent the interests of the patients of the health care business unless the court finds that the appointment of such ombudsman is not necessary for the protection of patients under the specific facts of such case.

11 U.S.C. § 333(a)(1).

12. Section 333(a)(1) requires the Court to act on the issue whether it should appoint an ombudsman within thirty (30) days after the petition date. *See* 11 U.S.C. § 333(a)(1). However, Federal Rule of Bankruptcy Procedure 2007.2(a) provides that:

> [T]he court shall order the appointment of a patient care ombudsman under § 333 of the Code, unless the court, on motion of the United States trustee or a party in interest filed no later than 21 days after the commencement of the case or within another time fixed by the court, finds that the appointment of a patient care ombudsman is not necessary under the specific circumstances of the case for the protection of patients.

Fed. R. Bankr. P. 2007.2(a). Furthermore, Federal Rule of Bankruptcy Procedure 2007.2(b) states:

> If the court has found that the appointment of an ombudsman is not necessary, or has terminated the appointment, the court on motion of the United States trustee or a party in interest, may order the appointment at a later time if it finds that the appointment has become necessary to protect patients.

Fed. R. Bankr. P. 2007.2(b).

13. In analyzing section 333 to the Bankruptcy Code, added to the Bankruptcy Code as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, bankruptcy courts have followed the factors set forth in *In re Alternate Family Care*, 377 B.R. 754 (Bankr. S.D.Fla. 2007) to determine whether the appointment of a patient care ombudsman is necessary under the specific facts of a case. *See In re Aknouk*, 648 B.R. 755, 761 (Bankr. S.D.N.Y. 2023); *In re Parkchester Oral and Maxillofacial Surgery Assocs. PC*, No. 23-11015 (MEW), 2023 WL 5761923, at *2 (Bankr. S.D.N.Y. 2023); *In re Valley Health Sys.*, 381 B.R. 756, 761 (Bankr. C.D.Cal. 2008); *In re Starmark Clinics*, 288 B.R. 729, 734 (Bankr. S.D.Tex. 2008); *In re N. Shore Hemotology-Oncology Assocs.*, 400 B.R. 7, 11 (Bankr. E.D.N.Y. 2008).

14. The *Alternate Family Care* test requires an examination of the operations of the debtor in light of the following nine (9) non-exclusive factors:

(1) The cause of the bankruptcy;

(2) The presence and role of licensing and supervising entities;

(3) Debtor's past history of patient care;

(4) The ability of the patients to protect their rights;

(5) The level of dependency of the patients on the facility;

(6) The likelihood of tension between the interests of the patients and the debtor;

(7) The potential injury to the patients if the debtor drastically reduced its level of patient care;

(8) The presence and sufficiency of internal safeguards to ensure appropriate level of care; and

(9) The impact of the cost of the ombudsman on the likelihood of a successful reorganization.

*Alternate Family Care*, 377 B.R. at 758. "The weight to be accorded to each of the *Alternate Family Care* factors when making a determination whether to appoint a patient care ombudsman is left to the sound discretion of the reviewing court." *Hemotology-Oncology Assocs.*, 400 B.R. at 11 (citing *Alternate Family Care*, 377 B.R. at 758).

15. The first factor, the cause of the bankruptcy, favors appointment of an ombudsman when there are concerns in connection to proper patient care. *See Aknouk*, 648 B.R. 764 (concluding this factor weighed against the appointment of an ombudsman "because the cause of the bankruptcy was liability related to the Debtor's alleged failure to remit employer contributions to the Union, and not any patient care issues, such as a malpractice"); *Valley Health*, 381 B.R. at 761 (Noting in its analysis of this factor that "[t]here is no evidence that the bankruptcy was precipitated by allegations of deficient patient care or privacy concerns"). Here, the Debtors did not file their cases due to issues with patient care. The cause of the Debtors' bankruptcy was the business divorce and subsequent judgment against the Debtors. This factor weighs against appointing an ombudsman.

16. The second factor depends upon the "presence and role" of licensing and supervising entities. *See Aknouk*, 648 B.R. at 764 ("The presence and role of these licensing agencies weighs against appointing a Patient Care Ombudsman.") (citing *Alternate Family Care*, 377 B.R. at 758); *Alternate Family Care*, 377 B.R. at 759 (Noting that this factor examines whether licensing and supervising entities are "already supervising the level of patient care" and concluding that appointing an ombudsman "would be a total duplication of the efforts of the various public and private entities already overseeing the welfare of the children"). In *Aknouk*, the court found that this factor weighed against the appointment of an ombudsman because the "Debtor is inspected regularly by New York State and the dentists complete continuing education to ensure

6

that they are up to date on the latest skills, treatments, techniques, and developments in the industry." 648 B.R. at 764. Here, the Debtors abide by HIPAA regulations and train employees on HIPAA regulations to ensure compliance. The Debtors also have an electronic medical record system in place for HIPAA purposes and encrypt their emails to assure the protection of sensitive information. Patients of the Debtors also have access to their medical records through a secured HIPAA-related portal. Finally, the Debtors' doctors are licensed professionals who are credentialed by Medicare, maintain their Medicare credentials, and abide by the rules of Medicare. This factor weighs against appointment of an ombudsman.

17. Factors three and four analyze a debtor's past history of patient care and the ability of the patients to protect their rights. Factor three includes an analysis of a debtor's history of "comprised patient care rights." *See Aknouk*, 648 B.R. at 764. Factor four examines "the ability of patients to protect their rights" and "[i]f a patient has the faculties to preserve their interests as opposed to a patient that is incapable of articulating and protecting their interests, then the appointment of an ombudsman would be extraneous." *Alternate Family Care*, 377 B.R. at 760. In *Alternate Family Care,* all the patients were minor children and the court presumed minor children were "generally unable to protect and preserve their interests." *See id.* Here, the Debtors' have been in business for approximately 15 years and the only malpractice cases currently pending against them are for the actions of doctors no longer employed by the Debtors. There have been no new malpractice cases since the separation of the Judgment Plaintiffs from the Debtors. In contrast to the facts of *Alternate Family Care*, the Debtors' patients are not strictly minor children. The majority of the patients treated by Debtors are adults. Factors three and four weigh against the appointment of an ombudsman.

7

55104506.7

18. Factor five, the level of dependency of the patients on the facility, includes assessing long-term dependency at a debtor's facility. *See Aknouk*, 648 B.R. at 765 (factor weighed against appointing an ombudsman because "[w]hile patients who are under local anesthesia following a dental surgery are certainly dependent on the Debtor, there is no long-term dependency comparable to that of a hospital or other inpatient facility because such patients leave shortly after surgery."). The court in *Aknouk* advised that where a debtor is "entirely an outpatient facility, courts have considered patients to be less dependent on the facility than they would be in an inpatient facility." *Id.* (citing *In re Miss. Maternal-Fetal Med., P.A.,* No. 21-0091-NPO, 2021 WL 1941627, at *3 (Bankr. S.D. Miss. 2021). Here, the Debtors are an entirely outpatient facility. When the Debtors perform orthopaedic surgeries, these procedures are performed in either surgical centers or hospitals, not the Debtors' facility. Factor five weighs against the appointment of an ombudsman.

19. Factors six and seven analyze the likelihood of tension between the interests of the patients and a debtor and the potential injury to the patients if a debtor drastically reduced its level of patient care. For the sixth factor, where a debtor does not file bankruptcy due to "deficient patient care or an inability to pay vendors and suppliers who are critical to patient care," the likelihood of tension between the interests of the patients and the debtor is low. *See Aknouk*, 648 B.R. at 765 (citing *In re Smiley Dental Arlington, PLLC*, 503 B.R. 680, 689 (Bankr. N.D. Tex. 2013)). For the seventh factor, "courts typically find this factor to weigh in favor of appointing a Patient Care Ombudsman where the Debtor is a long-term care facility or hospital that performs a high volume of inpatient procedures." *Aknouk*, 648 B.R. at 765. Here, the Debtors did not file due to deficient patient care or an inability to pay their vendors. Furthermore, the Debtors are not an inpatient facility that treats a high volume of patients. The Debtors are an entirely outpatient

8

facility treating members of their local communities. Therefore, factors six and seven weigh against the appointment of an ombudsman.

20. Factor eight, the presence and sufficiency of internal safeguards to ensure appropriate level of care, includes an analysis of whether a debtor "has sufficient internal mechanisms in place to monitor patient care and resolve complaints." *Aknouk*, 648 B.R. at 766 (examining the debtor's certifications, machine inspections, and steps taken to ensure facility cleanliness in analyzing this factor). To assure facility cleanliness, the Debtors have their facility thoroughly cleaned on a daily basis. The disposal of waste, such as used needles, is also critical to assuring proper patient care. The Debtors train their employees on how to properly handle and dispose of waste and employ a third party to properly remove waste from the facility. The Debtors also employ MedSafe on an annual basis to evaluate the cleanliness of their facility. MedSafe examines factors such as the status of waste, where medications are stored and how they are stored, and whether information of patients and staff are properly secured. Additionally, the Debtors' doctors are certified and maintain their in-network, Medicare certifications. Factor eight weighs against the appointment of an ombudsman.

21. Factor nine, the impact of the cost of the ombudsman on the likelihood of a successful reorganization, includes an analysis of whether the ombudsman would duplicate oversight services. *See Valley Health System*, 381 B.R. at 764–65 ("Given the level of internal controls and oversight by federal, state, local and professional organizations, the services of a patient care ombudsman would be redundant"). The analysis may also include the burden of additional administrative expenses on a debtor. *See Aknouk*, 648 at 766 ("In short, the margins here are thin and the Debtor does not have much room for additional administrative expenses, even if it does have a modest amount of cash on hand."). Appointing an ombudsman would create a

redundant service that the Debtors already have in place. The Debtors' doctors are Medicare certified and the Debtors' practice abides by HIPAA regulations (which includes the training of staff in HIPAA compliance). Additionally, MedSafe performs its annual review to assure facility cleanliness and security, while the Debtors have the facility cleaned on a daily basis and employ a third party to assure proper waste removal. The Debtors have taken the necessary steps to assure commitment to high quality patient care; an ombudsman would simply repeat these steps. Furthermore, appointment of an ombudsman would negatively impact the Debtors' cash flow, which is already in jeopardy. Accordingly, factor nine weighs against the appointment of an ombudsman.

22. In consideration of these factors, the Debtors submit that the appointment of a patient care ombudsman is unnecessary in this case, pursuant to 11 U.S.C. § 333(a)(1), and respectfully request this Court enter an order excusing the requirement for such appointment.

[remainder of page left intentionally blank]

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request that this Court enter an order: (i) finding that the appointment of a patient care ombudsman is not necessary in this case and excusing such appointment; and (ii) granting such other relief as this Court may deem just and proper.

Dated: February 28, 2025             **SAUL EWING LLP**

By: */s/ Stephen B. Ravin*
Stephen B. Ravin, Esquire
Turner N. Falk, Esquire
One Riverfront Plaza
1037 Raymond Blvd., Suite 1520
Newark, NJ 07102-5426
Telephone: (973) 286-6714
E-mail: stephen.ravin@saul.com
        turner.falk@saul.com

*Proposed Counsel for Debtors and Debtors in Possession*

55104506.7