| |
|---|
| **UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY**<br>*Caption in Compliance with D.N.J. LBR 9004-1(b)*<br>**SAUL EWING LLP**<br>Stephen B. Ravin, Esquire<br>Turner N. Falk, Esquire<br>One Riverfront Plaza<br>1037 Raymond Blvd., Suite 1520<br>Newark, NJ 07102-5426<br>Telephone: (973) 286-6714<br>E-mail:    stephen.ravin@saul.com<br>           turner.falk@saul.com<br><br>*Proposed Counsel to the Debtors and Debtors in Possession* |

| | |
|---|---|
| In re:<br><br>NEW JERSEY ORTHOPAEDIC INSTITUTE LLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 25-11370 (JKS)<br><br>(Jointly Administered) |

### DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 105(a), 363(b), AND 503(b) FOR AUTHORITY TO (I) MAINTAIN, RENEW AND CONTINUE INSURANCE POLICIES AND PROGRAMS AND (II) HONOR ALL INSURANCE OBLIGATIONS

New Jersey Orthopaedic Institute LLC and Northlands Orthopaedic Institute LLC (collectively, the "Debtors"), by and through their undersigned proposed counsel, hereby move this Court for an order authorizing, but not directing, the Debtors to maintain, renew and continue their insurance policies and programs and honor all insurance obligations (the "Motion"), and represents as follows:

---

[1] The last four digits of Debtor New Jersey Orthopaedic Institute LLC's tax identification number are 3560; the last four digits of Debtor Northlands Orthopaedic Institute LLC's tax identification number are 9828. The location of both Debtors' principal place of business and the Debtors' service address in these Chapter 11 Cases is 504 Valley Road, Suite 200, Wayne NJ 07470.

55111307.5

## JURISDICTION

1. This Court has jurisdiction over this Motion under 28 U.S.C. §1334, which is a core proceeding within the meaning of 28 U.S.C. §157(b)(2). Venue of this proceeding is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested herein are sections 105(a), 363(b), 507(a), and 541 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (as amended, the "Bankruptcy Code").

## BACKGROUND

3. On February 10, 2025 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey (the "Court").

4. No request has been made for the appointment of a trustee or examiner, and no official committee of unsecured creditors has been established in this case.

5. Information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of the Chapter 11 Cases is set forth in the *Declaration of Kinga Skalska-Dybas in Support of First Day Relief* [D.I. 7] (the "First Day Declaration").

6. Collectively, the Debtors form an orthopaedic and sports medicine practice that provides medical and surgical services to patients. The practice also offers services to numerous local schools, as well as medical coverage during high school football games. As of the Petition Date, the practice has four doctors and one mid-level provider.

## THE INSURANCE POLICIES

7. In connection with the operation of the Debtors' business, the Debtors maintain various insurance policies and workers' compensation programs (as renewed, amended, modified,

endorsed, and/or supplemented from time to time, and including any exhibit or addenda thereto, collectively, the "Insurance Policies and Programs" and all insurance premiums, assessments, service providers' fees or broker's fees and other obligations related thereto, including any taxes or other fees, collectively, the "Insurance Obligations") through several different insurance carriers (the "Insurance Carriers").  A list of the Debtors' Insurance Policies and Programs by Insurance Carrier and coverage type is attached as **Exhibit A**.

8. The Insurance Policies and Programs provide the Debtors with insurance coverage related to, among other things, malpractice, workers' compensation, employment practices liability, and cyber security.

9. The Debtors maintain the Insurance Policies and Programs to help manage and limit the risks associated with operating their business. The Insurance Policies and Programs are essential to the preservation of the value of the Debtors' business and property.

10. Some of the Insurance Policies and Programs are required by the various regulations, laws, and contracts that govern the Debtors' commercial activities.

11. Pursuant to the Insurance Policies and Programs, the Debtors pay premiums based upon a fixed rate established and billed by each Insurance Carrier (collectively, the "Insurance Premiums").

12. The Debtors do not believe any pre-petition amounts are currently due and owing on account of the Insurance Premiums.  Post-petition, insurance premiums may come due for coverage periods that include pre-petition periods.  Out of an abundance of caution, the Debtors seek authority to pay any such pre-petition Insurance Premiums when they become aware of them.

13. Included in their Insurance Policies and Programs, the Debtors maintain workers' compensation insurance (the "Workers' Compensation Program").

3

55111307.5

14. Although the Debtors do not believe any such amounts are outstanding, out of an abundance of caution, the Debtors seek approval to pay any Insurance Obligation related to the pre-petition period that may be owed to an insurance broker.

## SUMMARY OF RELIEF REQUESTED

15. Pursuant to sections 105(a), 363(b), and 503(b) of the Bankruptcy Code, the Debtors seek entry of an order authorizing, but not directing, them to (i) continue to maintain, renew, and continue their Insurance Policies and Programs and honor their Insurance Obligations in the ordinary course of business during the administration of the Chapter 11 Cases and (ii) pay any pre-petition Insurance Obligations.

## BASIS FOR RELIEF

16. Section 1112(b)(4)(C) of the Bankruptcy Code provides that "failure to maintain appropriate insurance that poses a risk to the estate or to the public" is "cause" for mandatory conversion or dismissal of a Chapter 11 case. 11 U.S.C. §1112(b)(4)(C). Furthermore, the Guidelines of the Office of the United States Trustee for Region 3 (the "U.S. Trustee") require debtors to maintain insurance coverage throughout their Chapter 11 cases.

17. The Court has authority pursuant to sections 105(a), 363(b), and 503(b) of the Bankruptcy Code to grant the relief requested by the Debtor. Section 503(b)(1) of the Bankruptcy Code provides that: "After notice and a hearing, there shall be allowed, administrative expenses…including…the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. §503(b)(1)(A). The Court, therefore, can authorize the Debtors to use estate funds to pay any Insurance Obligations arising or relating to the period after the Petition Date.

18. The Court may also grant the relief requested herein with respect to pre-petition obligations pursuant to sections 105(a) and 363(b) of the Bankruptcy Code. Section 363(b)(1) of

the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. §363(b)(1). This provision grants a court broad flexibility to authorize a debtor to pay pre-petition claims where a sound business purpose exists. *See, In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989).

19. Further, section 105(a) provides, in relevant part, that, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. §105(a). This provision codifies the inherent equitable powers of the bankruptcy court, including the power to authorize payment of pre-petition claims, under the "necessity of payment" doctrine, when such payment is critical to a debtor's reorganization or necessary for the preservation of the value of the debtor's estate. *See, e.g., In re Lehigh & N. E. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (stating that "the sine qua non for the application of the 'necessity of payment' doctrine is the possibility that the creditor will employ an immediate economic sanction failing such payment").

20. In such a circumstance, "it is evident that the payment made under the 'necessity of payment' rule is in the interest of all parties . . . because such payment will facilitate the [debtor's] continued operation." *In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102, n.1 (3d Cir. 1972) (citations omitted) ("A number of cases declare a so-called 'necessity of payment' exception to the normal deferment of the payment of pre-reorganization claims until their disposition can be made part of a plan of reorganization. These cases permit immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims shall have been paid."); *In re Motor Coach Indus. Int'l, Inc.*, No. 08-12136-BLS, 2009 WL 330993, at *2, n.5 (D. Del. Feb. 10, 2009) (citing *Lehigh, inter alia,*

5

for the proposition that "[t]he 'doctrine of necessity' or 'necessity of payment' doctrine is a general rubric for the proposition that a court can authorize the payment of pre-petition claims if such payment is essential to the continued operation of the debtor"); *see also In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) (stating "it is only logical that the bankruptcy court be able to use Section 105(a) of the Code to authorize satisfaction of the pre-petition claim in aid of preservation or enhancement of the estate").

21. The payment of pre-petition claims under the doctrine of necessity is consistent with the "two recognized policies" of Chapter 11 of the Bankruptcy Code: preserving going concern value and maximizing property available to satisfy creditors. *See Bank of Am. Nat'l Trust & Savs. Ass'n. v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 453 (1999). It is consistent with Bankruptcy Rule 6003, which implies that the payment of pre-petition obligations may be permissible within the first twenty-one (21) days of a case where doing so is "necessary to avoid immediate and irreparable harm."

22. The relief requested by this Motion represents a sound exercise of the Debtors' business judgment, is necessary to avoid immediate and irreparable harm to the Debtors' estates and is justified under sections 105(a), 363(b), and 503(b) of the Bankruptcy Code. As noted herein, the Debtors are required legally and contractually to maintain certain Insurance Policies and Programs and the nature of the Debtors' business makes it essential for them to maintain all Insurance Policies and Programs on an ongoing and uninterrupted basis. If any of the Debtors' Insurance Policies and Programs are terminated or lapse, the Debtors could be exposed to substantial liability to the detriment of all parties-in-interest. Additionally, the Debtors must maintain most of the Insurance Policies and Programs to comply with the guidelines of the U.S. Trustee.

23. Similarly, pursuant to state law, the Debtors must maintain the Workers' Compensation Program. If the Debtors fail to maintain the Workers' Compensation Program, among other things, state law may prohibit them from operating. Granting authority to pay all Workers' Compensation Program obligations, therefore, is crucial to the continued operation of the Debtors' business.

24. In sum, the continuation of the Insurance Policies and Programs and the authority to pay, in the Debtors' discretion, all Insurance Obligations, including any unpaid pre-petition Insurance Obligations, is essential to preserve the Debtors' Business and the value of the Debtors' estates for all parties-in-interest.

25. Bankruptcy Rule 6003(b) provides that, to the extent relief is necessary to avoid immediate and irreparable harm, a bankruptcy court may issue an order granting a "motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" before twenty-one (21) days after filing of the petition. Fed. R. Bankr. P. 6003(b). Disruptions regarding the Insurance Policies and Programs could severely prejudice the Debtors' chance for reorganization, cause the Debtors to violate state law or applicable U.S. Trustee guidelines, harm the Debtors' ability to retain employees, and expose the Debtors to risks from uninsured liabilities.

26. Late payments could frustrate the Debtors' relationships with employees and cause other severe and irreparable disruptions to the Debtors' Business which would have a negative impact on all parties-in-interest. Accordingly, the Debtors have satisfied the requirements of Bankruptcy Rule 6003.

55111307.5

27. To implement the foregoing successfully, the Debtors request a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent such stay applies.

WHEREFORE the Debtors respectfully request entry of the Proposed Order attached as **Exhibit B** granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Respectfully Submitted,

Dated: February 28, 2025

**SAUL EWING LLP**

By: */s/ Stephen B. Ravin*
Stephen B. Ravin, Esquire
Turner N. Falk, Esquire
One Riverfront Plaza
1037 Raymond Blvd., Suite 1520
Newark, NJ 07102-5426
Telephone: (973) 286-6714
E-mail: stephen.ravin@saul.com
  turner.falk@saul.com

*Proposed Counsel for Debtors and Debtors in Possession*

55111307.5