| |
|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** *Caption in Compliance with D.N.J. LBR 9004-1(b)* **SAUL EWING LLP** Stephen B. Ravin, Esquire Turner N. Falk, Esquire One Riverfront Plaza 1037 Raymond Blvd., Suite 1520 Newark, NJ 07102-5426 Telephone: (973) 286-6714 E-mail:  stephen.ravin@saul.com         turner.falk@saul.com  *Proposed Counsel to the Debtors and Debtors in Possession* |

| | |
|---|---|
| In re: NEW JERSEY ORTHOPAEDIC INSTITUTE LLC, *et al.*, Debtors.[1] | Chapter 11 Case No. 25-11370 (JKS) (Jointly Administered) |

**DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 105 AND 366 PROHIBITING UTILITIES FROM ALTERING, REFUSING, OR DISCONTINUING SERVICES ON ACCOUNT OF PREPETITION CLAIMS, ESTABLISHING PROCEDURES FOR DETERMINING REQUESTS FOR ADDITIONAL ADEQUATE ASSURANCE AND FOR RELATED RELIEF**

New Jersey Orthopaedic Institute LLC and Northlands Orthopaedic Institute LLC (collectively, the "Debtors"), by and through their undersigned proposed counsel, hereby move this Court for an order prohibiting utilities from discontinuing service on account of prepetition claims and establishing procedures for determining requests for additional adequate assurance (the "Motion"), and represent as follows:

---

[1] The last four digits of Debtor New Jersey Orthopaedic Institute LLC's tax identification number are 3560; the last four digits of Debtor Northlands Orthopaedic Institute LLC's tax identification number are 9828. The location of both Debtors' principal place of business and the Debtors' service address in these Chapter 11 Cases is 504 Valley Road, Suite 200, Wayne NJ 07470.

55109114.4

## JURISDICTION

1. This Court has jurisdiction over this Motion under 28 U.S.C. §1334, which is a core proceeding within the meaning of 28 U.S.C. §157(b)(2). Venue of this proceeding is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for relief requested herein are sections 105 and 366 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (as amended, the "Bankruptcy Code").

## SUMMARY OF RELIEF REQUESTED

3. On February 10, 2025 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey (the "Court").

4. Information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of the chapter 11 cases is set forth in the *Declaration of Kinga Skalska-Dybas in Support of First Day Relief* [D.I. 7] (the "First Day Declaration").

5. Collectively, the Debtors form an orthopedic and sports medicine practice that provides medical and surgical services to patients. The practice also offers services to numerous local schools, as well as medical coverage during high school football games. As of the Petition Date, the practice has four doctors and one mid-level provider.

6. In the ordinary course of business, the Debtors use phone and internet service, as well as natural gas, water, electricity, and other services provided by utility companies (the "Utility Services").

7. Most traditional utility services, excepting phone and internet, are paid for via the Debtors' landlord Valley Partners LLC and are included in the rent.

2

8. Attached hereto as **Exhibit A** is a list of all or substantially all of the utility companies and landlords providing utilities via rent[1] (the "Utility Companies") that were providing services to the Debtors as of the Petition Date.

9. Preserving Utility Services on an uninterrupted basis is essential to the Debtors' continued operations. Any interruption in Utility Services, even for a brief period of time, would seriously disrupt the Debtors' ability to conduct their business and would result in a decline in the Debtors' revenues. Such a result could seriously jeopardize the Debtors' efforts to maximize value for the benefit of their creditors. Therefore, it is critical that Utility Services continue uninterrupted during these chapter 11 cases.

10. As described more extensively in the First Day Declaration, the Debtors anticipate that they will have funds from post-petition receipts to pay post-petition utilities.

11. The Debtors anticipate having sufficient resources to pay, and intend to pay, all valid post-petition obligations for utility services in a timely manner. In addition, the Debtors' reliance on Utility Services for the operation of their Business and preservation of the value of their assets provides them with a powerful incentive to stay current on their utility obligations.

12. By this Motion, the Debtors seek to prevent any Utility Company from terminating Utility Services on account of prepetition claims.

13. The Debtors further seek to establish a process for the determination of adequate assurances, if necessary, pursuant to section 366 of the Bankruptcy Code.

14. To prevent interruption of Utility Services, the Debtors have requested expedited consideration of this Motion by a separate application.

---

[1] As discussed elsewhere in the Motion, the Debtors submit that a landlord cannot be a "utility" for section 366 purposes, but include their landlord in this Motion out of an abundance of caution.

3

55109114.4

15. Specifically, the Debtors seek the entry of an order: (a) prohibiting the Utility Companies from altering, refusing, or discontinuing services on account of unpaid prepetition invoices or prepetition claims; (b) establishing the procedures for Utility Companies to seek adequate assurance of future payment; (c) authorizing, but not requiring, the Debtors' payment of prepetition amounts owing to a Utility Company and providing that if a Utility Company accepts such payment, the Utility Company shall be deemed to be adequately assured of future payment and to have waived any right to seek additional adequate assurances in the form of a deposit or otherwise; (d) providing that if a Utility Company timely and properly requests from the Debtors additional adequate assurance (as set forth below) that the Debtors believe is unreasonable, and the Debtors are unable to resolve the request consensually with such Utility Company, then upon the written request of the Utility Company, the Debtors shall file a motion for determination of adequate assurances of payment and set such motion for hearing at the next regularly-scheduled hearing occurring more than twenty (20) days after the date of such request, unless another hearing date is agreed to by the parties or ordered by the Court; (e) providing that any Utility Company having made a request for additional adequate assurance of payment shall be deemed to have adequate assurance of payment until the Court enters a final order in connection with such a request finding that the Utility Company is not adequately assured of future payment; and (f) providing that any Utility Company that does not timely and in writing request additional adequate assurance of payment (as set forth below) shall be deemed to be adequately assured of payment under section 366(b) of the Bankruptcy Code, and to have waived any right to claim an additional deposit.

16. The Debtors further request that Utility Companies be required to include with any request for additional adequate assurance a summary of the Debtors' monthly usage and payment history relevant to the affected account.

55109114.4

**BASIS FOR RELIEF REQUESTED**

A. Assurances of Payment and Determination Process

17. "Section 366(a), then, prohibits a utility from, *inter alia,* terminating service during the first twenty (20) days of a bankruptcy case based on a prepetition debt. *See In re Whittaker,* 882 F.2d 791, 793-794 (3d Cir. 1989). After the expiration of that initial twenty (20) day period, §366(b) prohibits the utility from terminating service if the debtor has timely furnished adequate assurance of payment for post-petition service. *Id.*" *In re Weisel*, 428 BR 185, 187 (W.D.Pa. 2010).

18. Pursuant to section 366 of the Bankruptcy Code, a utility "may alter, refuse, or discontinue utility service, if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from the debtor or the trustee adequate assurance of payment for utility service that is satisfactory to the utility."

19. Section 366(c)(1) of the Bankruptcy Code lists applicable methods of providing "assurance of payment" including deposits, letters of credit, and any mutually-agreeable form of security between debtor and utility.

20. It is well established that section 366(b) of the Bankruptcy Code permits a court to find that no adequate assurance payment at all is necessary to provide a utility with adequate assurance of payment. *See e.g., Virginia Elec. & Power Co. v. Caldor, Inc.*, 117 F.3d 646, 650 (2d Cir. 1997).

21. Further, section 366(c) of the Bankruptcy Code, like section 366(b), requires only that a utility's assurance of payment be "adequate". Courts recognize that adequate assurance of performance does not constitute an absolute guarantee of a debtor's ability to pay. *See, e.g., In re Steinebach*, 303 B.R. 634, 641 (Bankr. D. Ariz. 2004) (citing *In re Adelphia Bus. Solutions, Inc.*,

280 B.R. 63, 80 (Bankr. S.D.N.Y. 2002). Court have also recognized that, in determining the requisite level of adequate assurance, bankruptcy courts should "focus upon the need of the utility for assurance, and to require that the debtor supply no more than that, since the debtor almost perforce has a conflicting need to conserve scarce financial resources." *See, e.g., Virginia Elec. & Power Co. v. Caldor, Inc.*, 117 F.3d 646, 650 (2d Cir. 1997).

22. A small minority of courts have suggested that a landlord providing utilities as part of a commercial lease is a "utility" for the purposes of section 366. See *In re Good Time Charlie's Ltd.*, 25 B.R. 226, 227 (Bankr. E.D. Pa. 1982) (landlord is a utility because it "clearly occupies a 'special position with respect to the debtor' in its role as the debtor's electricity supplier."); see also *In re Spence*, 545 B.R. 280 (Bankr. W.D. Mo. 2016) (ruling that a homeowner's association could be considered a "utility" and subject to section 366).

23. Pursuant to section 105(a) of the Bankruptcy Code, this Court may issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

24. As discussed above, the Debtors require continued post-petition Utility Services to preserve and maximize their value.

25. The Debtors seek to require the Utility Companies to continue to provide Utility Services, and to provide a straightforward mechanism to allow the Debtors and Utility Companies to determine the appropriate "assurance of payment" pursuant to section 366 of the Bankruptcy Code.

26. The assurance process described below permits the Debtors and Utility Company to act flexibly within the bounds of section 366 of the Bankruptcy Code to determine and implement assurances of payment at minimal cost to the estates.

55109114.4

27. The Debtors thus request that this Court employ its section 105(a) of the Bankruptcy Code powers to authorize this streamlined process.

28. The Debtors request authority to pay, at the Debtors' sole discretion, any or all prepetition amounts owed to the Utility Companies in lieu of making deposits – which may include applying existing prepetition deposits, if any, to prepetition balances. Further, the Debtors request that any Utility Company accepting such payment on account of prepetition claims be deemed to be adequately assured and to have waived any and all rights to request additional adequate assurances, in the form of a deposit or otherwise. Additionally, the Debtors request that a deposit equal to two (2) weeks of utility service, calculated based on the historical average over the twelve (12) months before the Petition Date, will be deemed sufficient, in the event a Utility Company requests additional adequate assurance.

29. The Debtors recognize the right of each Utility Company to request adequate assurance. To process such requests in an orderly fashion, the Debtors propose that Utility Companies be afforded thirty (30) days from the date of service of the Notice Package (as defined below) to make a written request, if any, to the Debtors for additional adequate assurance. Utility Companies making such requests, if any, shall be required to include with any request for additional adequate assurance a summary of the Debtors' payment history relevant to the affected account. If the Debtors are unable to resolve the request consensually with the Utility Company, then upon the written request of the Utility Company, the Debtors will file a motion for determination of adequate assurance of payment (a "Determination Motion") and set such Determination Motion for hearing (the "Determination Hearing") at the next regularly-scheduled hearing date more than twenty (20) days after the date of such written request, unless another

hearing date is agreed to by the parties or ordered by the Court (collectively, the "Determination Procedures").

30. If a Determination Motion is filed or a Determination Hearing is scheduled, the Debtors request that the Utility Company be deemed to have adequate assurance of payment under section 366 of the Bankruptcy Code until entry of a final order finding that the Utility Company is not adequately assured of future payment. The Debtors further request that any Utility Company that does not timely request additional adequate assurance in accordance with the procedures set forth herein be deemed to have adequate assurance of payment under section 366 of the Bankruptcy Code, and have absolutely waived any such right.

31. The Debtors will serve copies of any order issued by this Court approving this Motion (the "Notice Package") no later than five (5) business days after the entry of any such order. The Debtors reserve the right to supplement Exhibit A. Any utility company that is not currently listed on Exhibit A, but which is subsequently identified and served with the Notice Package by the Debtors, will be afforded thirty (30) days from the date of service of the Notice Package to such utility company to make a request, if any, to the Debtors for additional adequate assurance. Concurrently with such service, the Debtors will file with the Court a supplement to Exhibit A, adding the name of the utility company or companies so served and not listed on the attached Exhibit A.

32. Based upon the foregoing, the Debtors believe that most, if not all, of their utility providers have adequate assurance of payment, and accordingly, there is simply no need to impose upon the Debtors the added burden of paying cash security deposits.

33. The Debtors' ability to receive uninterrupted Utility Services is essential to the continued operation of their business post-petition, and therefore, to the success of the Debtors'

55109114.4

chapter 11 cases. Accordingly, the relief requested herein is necessary and in the best interests of the Debtors' creditors and estate.

34. The Debtors submit that their landlord providing utilities for a flat rate included in rent is not a "utility," since the landlord cannot cease providing utilities without breaching the underlying lease. However, even an attempt to alter utility service by this landlord could severely disrupt the Debtors' businesses.

35. Fed. R. Bankr. P. 6003 prohibits the entry of an order authorizing a debtor to "use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" within 21 days of the Petition Date unless "relief is necessary to avoid immediate and irreparable harm."

36. As discussed above, the Debtors require consistent, uninterrupted access to Utility Services.

37. To effect the determination process above, the Debtors require immediate authority to use their estate assets to apply existing deposits or make new post-petition deposits to provide assurances of payment.

38. The Debtors submit that they have shown they will suffer immediate and irreparable harm that merits entry of the requested relief pursuant to Rule 6003.

55109114.4

WHEREFORE, the Debtors respectfully request that this Court enter the Proposed Order attached hereto as **Exhibit B** prohibiting Utility Companies from discontinuing services, establishing procedures for determining requests for adequate protection, and grant such further relief as is just and proper.

Dated: February 28, 2025               **SAUL EWING LLP**

By: */s/ Stephen B. Ravin*
    Stephen B. Ravin, Esquire
    Turner N. Falk, Esquire
    One Riverfront Plaza
    1037 Raymond Blvd., Suite 1520
    Newark, NJ 07102-5426
    Telephone: (973) 286-6714
    E-mail: stephen.ravin@saul.com
            turner.falk@saul.com

*Proposed Counsel for Debtors and Debtors in Possession*

55109114.4