## EXHIBIT B

**Settlement Agreement**

55489409.1

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is made and entered into as of the date last signed below, by and between debtors New Jersey Orthopaedic Institute LLC and Northlands Orthopaedic Institute LLC (collectively the "Debtors"), Dr. Vincent McInerney and/or Lisa McInerney (the "Individuals") and Anthony Festa, M.D., Anthony Scillia, M.D., Craig Wright, M.D., John Callaghan, M.D., Casey Pierce, M.D., and Academy Orthopaedics LLC (collectively, the "Judgment Creditors", with the Debtors and Individuals, the "Parties").

## RECITALS

The Judgment Creditors were former members of the Debtors.

Starting in 2021, Dr. McInerney and the Judgement Creditors engaged in a contested "business divorce" over the terms of their departure from the Debtors and the financial obligations created thereby.

The parties to the dispute engaged in binding arbitration over this dispute. In May, 2022, the Debtor transferred the sum of $1.75 million to the attorney trust account of Frier Levitt LLC. (the "FL Escrow"), during the pendency of the litigation between the Debtors, Dr. McInerney and the Judgment Creditors, which was referred to arbitration before Ira Marcus, Esq. (the "Arbitrator") of the American Health Law Association (the "Arbitration"). The FL Escrow has accrued interest in the amount of $492.12.

On February 19, 2024, the Arbitrator entered an award, which found substantially in favor of the Judgment Creditors and against the Debtors.

On September 23, 2024, the Superior Court of New Jersey Passaic County Chancery Division, General Equity entered an order in *Anthony Festa, M.D., Anthony Scillia, M.D., Craig Wright, M.D., John Callaghan, M.D., Casey Pierce, M.D., and Academy Orthopaedics LLC v. Vincent McInerney, M.D., New Jersey Orthopaedic Institute LLC, and Northlands Orthopaedic Institute LLC*, case no. PAS-C-26-24 entering the arbitration award in favor of the Judgment Creditors as a judgment in the amount of $7,605,000.00 (the "Judgment").

On January 30, 2025, a writ of execution in connection with the Judgment was issued.

After the writ was issued, it was delivered to the Morris County Sheriff, who levied on the Debtors' bank accounts and the FL Escrow in the total amount of $7,771,214.04 on February 4, 2025 (the "Levy").

The Levy further restrained the $1.75 million transferred by the Debtors to the FL Escrow in 2022, with interest accrued thereon, and imposed a lien upon the following account balances in the total amount of $684,073.29:

A. Wells Fargo Account #5229 in the amount of $2,572.98;
B. Wells Fargo Account #5179 in the amount of $13,999.30;
C. Wells Fargo Account #2324 in the amount of $641,228.15.
D. Valley National Bank Account #9931 in the amount of $26,262.86; and

4882-9754-5769 v1
BE.16292595.1/ACA028-281497

E.  Valley National Bank Account #7645 in the amount of $10.00

On February 10, 2025 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey (the "Court").

On the Petition Date, by way of a verified complaint and application for an order to show cause, the Debtors commenced Adv. Pro. No. 25-01036 (JKS), seeking to set aside the Levy as a preferential transfer under 11 U.S.C. §§ 547 and 550 and a violation of the automatic stay under 11 U.S.C. § 362 (the "Adversary Proceeding"). [Adv. Pro. D.I. 1].

The Judgment Creditors opposed the Debtors' order to show cause, and contend that the $1.75 million in the FL Escrow was not property of the Debtor's Estate or, in the alternative, that the Judgment Creditors held a perfected security interest in the FL Escrow.

Pursuant to a series of orders agreed to between the Debtors and Judgment Creditors, Saul Ewing LLP came to hold funds subject to the Levy in the present amount of approximately $580,000.00 in escrow (the "Saul Escrow"), pending resolution of the Adversary Proceeding.

The Judgment Creditors filed an *Answer and Third-Party Complaint* in the Adversary Proceeding, asserting, among other claims and defenses, that the FL Escrow was not property of the Debtors' bankruptcy estates that the Judgment Creditors held an additional non-dischargeable claim against the Debtors and naming Dr. McInerney as a party and bringing third party claims against him.

From 2021 through the Petition Date, Dr. McInerney and Lisa McInerney received payments from the Debtors, which they contend to be [i] distributions from the Debtors on account of Dr. McInerney's ownership interest of the Debtors; and [ii] payments for wages to Lisa McInerney on account of her employment by the Debtors.

The Individuals and Judgment Creditors are entitled to certain assets, primarily stocks, bonds and other investments, held in a cash balance plan administered by Merrill Lynch (the "Cash Balance Plan"). The Parties cannot withdraw or disburse any amounts from the Cash Balance Plan until a funding shortfall in the Cash Balance Plan (the "Shortfall") is paid.

The Individuals own a membership interest in Valley Partners LLC ("Valley Partners") the entity that owns the real estate located at 504 Valley Rd, Suite 22, Wayne, NJ 07470 (the "Wayne Premises"). The Debtors maintain offices at the Wayne Premises.

The Individuals own a membership interest in 622 Eagle Rock Avenue Realty, LLC, the entity that owns the real estate located at 622 Eagle Rock Avenue, West Orange, NJ 07052 (the "West Orange Entity").

The Judgment Creditors have alleged that the distributions to Dr. McInerney or wages paid to Lisa McInerney may be avoidable pursuant to 11 U.S.C. § 544-550 and applicable state law.

The Parties engaged in Court-facilitated mediation on April 23, 2025. During that mediation, the Parties reached a settlement of all issues in the Adversary Proceeding and bankruptcy cases. To avoid the incurrence of continuing and substantial expenses and the

- 2 -

significant uncertainties of litigation, the Parties have decided to compromise, settle, forever resolve, and finally dispose of all outstanding disputes between them and obtain the Judgment Creditors' support for the confirmation of a plan of reorganization consistent with this Agreement (a "Plan").

**NOW,** for other good and valuable consideration, the Parties hereby agree as follows:

1.      Recitals. Each of the recitals set forth above are incorporated herein, and the Parties acknowledge that each recital is true and correct.

2.      Effective Date. The term "Effective Date" means the date on which the Order confirming the Plan becomes final and non-appealable.

3.      Bankruptcy Court Approval. As soon as reasonably possible after all Parties have executed this Agreement, the Debtors shall file a motion (the "9019 Motion") with the Bankruptcy Court requesting approval of this Agreement. This agreement will become effective upon the Bankruptcy Court's approval of the 9019 Motion.

4.      Consent to Plan. Contingent on the Bankruptcy Court approving the 9019 Motion, and the Order approving the 9019 Motion becoming final and non-appealable, the Judgement Creditors shall support any Plan that provides the Judgment Creditors treatment consistent with this Agreement. The Judgment Creditors shall vote their claims to accept the Plan. If any Judgment Creditor does not affirmatively vote their claim to accept the Plan, they are deemed to have accepted the Plan and this deemed acceptance will be counted for voting purposes. In the event any objections are filed to the Plan by any third party, the Individuals and the Debtors agree to take reasonable steps to obtain confirmation of the Plan, including but not limited to contributions of new value pursuant to this Agreement needed to obtain confirmation of the Plan by the Bankruptcy Court.

5.      Submission of Plan. Debtor agrees to file a Plan prior to June 10, 2025, and utilize its best efforts to obtain confirmation of the Plan by August 1, 2025.

6.      Settlement of Claim and Secured Status. Upon approval of this Agreement by the Bankruptcy Court, and contingent on the occurrence of the Effective Date, the Judgment Creditors' claims against the Debtors[1] and their secured status shall be allowed as follows:

> 6.1 FL Escrow: $1,750,492.12 Secured Claim, subject to Judgment Creditors' contention that this money is not property of the Estate, which is not waived pursuant to the terms of this Settlement Agreement;

> 6.2 $684,073.29 Secured Claim, secured by the Judgment Creditors' pre-petition Levy against the Debtors' bank accounts;

---

[1]      The list of claims enumerated above does not include claims against the Individuals arising from the funding Shortfall, which is also being addressed as part of this Agreement.

BE.16292595.1/ACA028-281497

6.3 $905,609.59 unsecured claim ($885,000.00 plus interest through the Petition Date), for unpaid BAIT rebate; and

6.4 $4,468,212.72 general unsecured claim.

7. <u>Key Terms</u>. The Parties will make the following payments and transfers, which satisfy the claims of the Judgment Creditors in full:

7.1 <u>Debtors' Obligations</u>:  The Debtors are primarily responsible for the following payments and transfers:

7.1.1 On the Effective Date, the Parties shall take all necessary action to release the FL Escrow and transfer the entire FL Escrow amount to the Judgment Creditors.

7.1.2 On the Effective Date, the Parties shall take all necessary action to release the amount of $300,000.00 from the Saul Escrow to the Judgment Creditors, and the Judgment Creditors shall release their lien on the remaining funds in the Saul Escrow.

7.1.3 The Plan will include a promissory note in the form attached hereto as Exhibit "A", pursuant to which the Debtors will pay the Judgment Creditors $300,000.00 over thirty months, as more specifically described in the promissory note.

7.1.4 The Debtors' shall reject their Lease for the Wayne Premises pursuant to the confirmed Plan or separate motion, with the Lease rejection date being effective on or before October 31, 2025, and the Debtors shall vacate their offices at the Wayne Premises on or before October 31, 2025.  The Debtors shall be current on rent at the time they vacate.

7.1.5 The Debtors shall provide the Judgment Creditors with the documents necessary for the preparation of their 2024 tax returns.

7.2 <u>Individuals' Obligations</u>: The Individuals are primarily responsible for the following payments and transfers:

7.2.1 On or before the Effective Date, the Debtors or the Individuals shall cause the entire Shortfall to be paid.  When the Cash Balance Plan permits distributions to the Parties, the Individuals shall transfer cash or assets worth $300,000.00 from Dr. McInerney's portion of the Cash Balance Plan to the Judgment Creditors, as the Judgment Creditors direct.  The Parties reserve the right to recharacterize the payment and payor of the Shortfall to reflect the substance of this settlement.

7.2.2 On the earlier of (i) the payment of the Shortfall; or (ii) the Effective Date, the Debtors and Individuals shall direct the Cash Balance Plan

to disburse to the Judgment Creditors their portion of the Cash Balance Plan to an account/accounts of the Judgment Creditors' choosing, which the Parties agree is not property of the Debtors' Bankruptcy Estate.

7.2.3    On the Effective Date, the Individuals shall transfer their direct and/or indirect membership interests in Valley Partners (i.e., the entity that owns the Wayne Premises), and the West Orange Entity, held in their names or in the name of any limited liability owned and/or controlled by the Individuals (including but not limited LAM Valley LLC) to the Judgment Creditors as they shall direct. Upon the Bankruptcy Court's approval of the 9019 Motion, the Individuals shall notify Valley Partners and the West Orange Entity of their intention to transfer their membership interests in these entities to the Judgment Creditors and shall utilize their best efforts to facilitate to obtain the Board of Managers of Valley Partners and the West Orange Entity to approve such transfers. In the event that the Operating Agreements for Valley Partners and the West Orange Entity prohibit or otherwise restrict any such transfers, the Individuals agree that their membership interests in Valley Partners and the West Orange Entity will nonetheless be sold to the remaining members of those entities, under such terms as the Valley Partners and the West Orange Entity's respective Operating Agreements may provide. The Individuals acknowledge and agree that any payment that they would otherwise be entitled to receive for the transfers of their membership interest in Valley Partners and the West Orange Entity shall be pledged to the Judgment Creditors. The Individuals expressly represent and warrant that they have the requisite power and authority to consummate the transactions contemplated and detailed in Section 7.2.3 of this Agreement on their own behalf and on behalf of LAM Valley LLC or any other entity owned by the Individuals that possesses the membership interests in the West Orange Entity, and that the Individuals direct and indirect membership interest in Valley Partners and the West Orange Entity are owned free and clear of any and all liens, security instruments, UCC filings, encumbrances, hypothecations, claims and/or pledges of any kind or any nature. The Individuals acknowledge and agree that they will cooperate with the Judgment Creditors and execute all documents required by Valley Partners and the West Orange Entityt to effectuate the transfer of their direct and/or indirect membership interests in Valley Partners and the Wet Orange Entity to Judgment Creditors.

7.2.4    Dr. McInerney shall personally guarantee the obligation described in Section 7 of this Agreement by executing a Guaranty in the form attached hereto as Exhibit "B".

BE.16292595.1/ACA028-281497

7.2.5   Dr. McInerney shall provide a certified financial statement disclosing all valuable assets in which he has an interest prior to filing the 9019 Motion.

8.      <u>Dismissal of Adversary Proceeding</u>.   On the Effective Date, the Adversary Proceeding is dismissed with prejudice.

9.      <u>Tax Treatment</u>.  The Debtors and Individuals shall take reasonable steps to fulfill their payment and transfer obligations pursuant to the Agreement in a manner that is most favorable to the Judgment Creditors for tax purposes.   The Judgment Creditors shall take reasonable steps to characterize the Parties' performance of their duties under this Agreement in a manner that is most favorable to the Debtors or Individuals for tax purposes, unless this characterization would result in less-favorable tax characterization for the Judgment Creditors.

10.     <u>Resolution of Other Disputes</u>.   The Judgment Creditors may not object to any administrative expenses requested in the Debtors' cases.

11.     <u>Mutual Releases</u>.  On the Effective Date and the Judgment Creditors' receipt of the payment set forth in Sections 7.1.1, 7.1.2, 7.2.2 and the Individuals' performance of their obligations set forth in Section 7.2.3 of this Agreement, the Parties, without further action, irrevocably and unconditionally, fully, finally and forever waive, release, acquit and discharge each other and their parents, subsidiaries, affiliates, members, directors, officers, managers, employees, insiders, attorneys, insurers, agents and successors and assigns, (collectively, the "<u>Releasees</u>") of and from any and all claims  obligations, suits, judgments, damages, demands, debts, rights (including without limitation, rights of indemnity, contribution, payment, and reimbursement), liabilities, or causes of action, whether known or unknown, direct or indirect, liquidated or unliquidated, fixed or contingent, asserted or retained, foreseen or unforeseen, matured or unmatured, presently existing in law, equity, statute, or otherwise, including but not limited to, any of the foregoing arising under theories of contract, successor liability, tort, agency, unjust enrichment, alter ego, substantive consolidation, extension,  veil piercing, equity and any and all fraudulent conveyance or transfer claims that were or could be brought by the Parties under state, federal or foreign law, including but not limited to any claims that were or could have been asserted against in the Adversary Proceeding or any other action or proceeding.  For the avoidance of doubt, this Section does not release any Party from any claim arising out of this Agreement, including but not limited to all of the Debtors/Individuals obligations set forth in Section 7 of this Agreement.

12.     <u>Party Representations</u>.  Each Party represents and warrants that at the time of execution of this Agreement: (a) such Party and the signatory hereto has the power and authority to execute, deliver and perform this Agreement; (b) such Party has taken all necessary actions to authorize the execution, delivery and performance of this Agreement ; (c) this Agreement has been duly executed and delivered by such Party and, subject to Bankruptcy Court approval, constitutes the legal, valid, and binding obligations of such Party, enforceable against it in accordance with their respective terms; (d) such Party's execution, delivery, and performance of this Agreement does not and will not conflict with, or constitute a violation or breach of, or constitute a default under any obligation of such Party and will not violate any applicable law, or any order or decree of any court or government instrumentality applicable to such Party; and (e) such Party has entered into this Agreement in reliance on its own independent investigation and analysis of the facts

BE.16292595.1/ACA028-281497

underlying the subject matter of this Agreement, and no representations, warranties, or promises of any kind have been made directly or indirectly to induce it to execute this Agreement other than those that are expressly set forth in this Agreement.

13.    <u>No Assignment</u>.  Each of the Parties represents and warrants that it has not assigned or transferred any released matter or any right to consideration provided pursuant to this Agreement.

14.    <u>No Admission of Liability</u>.  This Agreement constitutes a compromise of the Parties' disputes.  With the exception of Section 5 of this Agreement, nothing contained herein shall in any way constitute or be deemed to be an admission or concession by any Party as to any matter, including with respect to the truth of any fact alleged by the Parties, or the validity of any claim or cause of action that has been or could be asserted in any of the claims that are settled herein.  Except in a dispute seeking enforcement of this Agreement, nothing in this Agreement or any of its terms, or any negotiations or proceedings connected with this Agreement, or any documents or statements referred to therein, is admissible in evidence against any Party in any litigation, matter, or proceeding between any of the Parties or any other litigation, matter or proceeding involving a Party.

15.    <u>Voluntary Agreement</u>.  Each Party acknowledges that it has read all the terms of this Agreement, has had an opportunity to consult with counsel of its own choosing or voluntarily waived such right, and enters into this Agreement voluntarily and without duress.

16.    <u>Joint Drafting</u>.  This Agreement shall be deemed to have been jointly drafted by the Parties, and in construing or interpreting this Agreement, no provision shall be construed or interpreted for or against any Party because such provision or any other provision of the Agreement was purportedly prepared or requested by such Party.

17.    <u>Applicable Law</u>.  The validity, interpretation and performance of this Agreement shall be construed and interpreted according to the laws of the State of New Jersey, except to the extent inconsistent with federal law.

18.    <u>Successors and Assigns</u>.  This Agreement shall be binding on and inure to the benefit of the Parties and their respective agents, employees, affiliates, successors and assigns, including any chapter 7 trustee of the estate of any Party.

19.    <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same Agreement.  Delivery of a signature page to this Agreement by facsimile or other electronic means shall be effective as delivery of the original signature page to this Agreement.

20.    <u>Entire Agreement</u>.  This document contains the entire Agreement between the Parties and may be modified only in a writing signed by all of the Parties or their duly appointed agents.  All prior agreements and understandings between the Parties concerning the subject matter hereof are superseded by the terms of this document.

BE.16292595.1/ACA028-281497

21.   <u>Divisions and Headings.</u>   The divisions of this Agreement into sections and subsections and the use of captions and headings in connection therewith are solely for convenience and shall have no legal effect in construing the provisions of this Agreement.

**WHEREFORE**, the Parties have executed this Agreement as of the date first set forth above.

NEW JERSEY ORTHOPAEDIC INSTITUTE, LLC

By: _____
Dr. Vincent McInerney, Principal

NORTHLANDS ORTHOPAEDIC INSTITUTE, LLC

By: _____
Dr. Vincent McInerney, Principal

By: _____
Dr. Vincent McInerney, an individual

By: _____
Lisa McInerney, an individual

By: _____
Anthony Festa, M.D., an individual

By: _____
Anthony Scillia, M.D., an individual

By: _____
Craig Wright, M.D., an individual

- 8 -

21.    Divisions and Headings.  The divisions of this Agreement into sections and subsections and the use of captions and headings in connection therewith are solely for convenience and shall have no legal effect in construing the provisions of this Agreement.

WHEREFORE, the Parties have executed this Agreement as of the date first set forth above.

NEW JERSEY ORTHOPAEDIC INSTITUTE, LLC

By: _____

Dr. Vincent McInerney, Principal

NORTHLANDS ORTHOPAEDIC INSTITUTE, LLC

By: _____

Dr. Vincent McInerney, Principal

By: _____

Dr. Vincent McInerney, an individual

By: _____

Lisa McInerney, an individual

By: _____

Anthony Festa, M.D., an individual

By: _____

Anthony Scillia, M.D., an individual

By: _____

Craig Wright, M.D., an individual

- 8 -

21.    <u>Divisions and Headings.</u>   The divisions of this Agreement into sections and subsections and the use of captions and headings in connection therewith are solely for convenience and shall have no legal effect in construing the provisions of this Agreement.

**WHEREFORE**, the Parties have executed this Agreement as of the date first set forth above.

NEW JERSEY ORTHOPAEDIC INSTITUTE, LLC

By: _____
Dr. Vincent McInerney, Principal

NORTHLANDS ORTHOPAEDIC INSTITUTE, LLC

By: _____
Dr. Vincent McInerney, Principal

By: _____
Dr. Vincent McInerney, an individual

By: _____
Lisa McInerney, an individual

By: _____
Anthony Festa, M.D., an individual

By: _____
Anthony Scillia, M.D., an individual

By: _____
Craig Wright, M.D., an individual

- 8 -

21.    <u>Divisions and Headings.</u>  The divisions of this Agreement into sections and subsections and the use of captions and headings in connection therewith are solely for convenience and shall have no legal effect in construing the provisions of this Agreement.

**WHEREFORE**, the Parties have executed this Agreement as of the date first set forth above.

NEW JERSEY ORTHOPAEDIC INSTITUTE, LLC

By:    _____

Dr. Vincent McInerney, Principal

NORTHLANDS ORTHOPAEDIC INSTITUTE, LLC

By:    _____

Dr. Vincent McInerney, Principal

By:    _____

Dr. Vincent McInerney, an individual

By:    _____

Lisa McInerney, an individual

By:    _____

Anthony Festa, M.D., an individual

By:    _____

Anthony Scillia, M.D., an individual

By:    _____

Craig Wright, M.D., an individual

- 8 -

By: _____

John Callaghan, M.D., an individual

By: _____

Casey Pierce, M.D., an individual


Academy Orthopaedics LLC

By: _____

Anthony Festa, Authorized Representative

By: _____
      John Callaghan, M.D., an individual

By: _____
      Casey Pierce, M.D., an individual


Academy Orthopaedics LLC

By: _____
      Anthony Festa, Authorized Representative

BE.16292595.1/ACA028-281497

By: _____

John Callaghan, M.D., an individual


By: _____

Casey Pierce, M.D., an individual


Academy Orthopaedics LLC

By: _____

Anthony Festa, Authorized Representative

# PROMISSORY NOTE

Principal Amount: $300,000.00

**FOR VALUE RECEIVED,** New Jersey Orthopaedic Institute LLC and Northlands Orthopaedic Institute LLC (the "**Payors**") promise to pay to Anthony Festa, M.D., Anthony Scillia, M.D., Craig Wright, M.D., John Callaghan, M.D., Casey Pierce, M.D., and Academy Orthopaedics LLC (all and singularly, the "**Holder**"), their successors and assigns, the principal sum of three hundred thousand and 00/100 dollars ($300,000.00).

1.   <u>Repayment</u>.  All unpaid principal and interest (at the rate of 4.00% per annum) shall be paid in thirty (30) even payments of ten thousand and five hundred and twenty four and 98/100 dollars ($10,524.98) per month beginning on the first day of the month following the Effective Date of the Settlement Agreement between the Holders, the Payors and Dr. Vincent McInerney and Lisa McInerney (all and singularly, the "**Individuals**"), as defined in Section 2 of the Settlement Agreement, and shall continue on the 1st of each month thereafter, until such time as the entire principal sum has been paid in full.

2.   <u>Late Charge</u>:  In the event that any payment due and owing under the Note is not made within five (5) days of the scheduled due date, the Holder shall assess against the Payors a late charge equal to six percentage points (6%) of the late payment;

3.   <u>Default</u>.  The following shall constitute an Event of Default under this Note:

(a)   Failure to make any payments required hereunder (including late charges) within ten (10) days after notice from Holder to Payors that such payment is overdue; or

(b)   The filing of any petition or action by the Individuals, or the adjudication of the Individuals as bankrupt, under the United States Bankruptcy Code, or any successor thereto, or any state insolvency law.

(c)   Any default under the terms of the Settlement Agreement approved by the United States Bankruptcy Court for the District of New Jersey in the matter of *In re New Jersey Orthopaedic Institute LLC*, Bankruptcy Case No.: 25-11370 and *In re Northlands Orthopaedic Institute LLC*, Bankruptcy Case No.: 25-11372;

(d)    The conversion of the Payors' Chapter 11 bankruptcy to Chapter 7 or the appointment of a Chapter 11 Trustee;

4.    <u>Acceleration Upon Default</u>.  Upon the occurrence of an Event of Default, the entire unpaid principal balance of this Note shall, at the option of Holder, immediately become due and payable.  In addition, following any Event of Default, Holder may immediately proceed to protect and enforce Holder's rights either by action in equity or action at law against the Payors and any guarantor of the indebtedness due and owing from Payors to Holder.  Following any Event of Default, interest on the unpaid principal sums due and owing to Holder shall accrue at a rate equal to five (5%) percentage points above the rate described in Paragraph 1 of this Note (the "Default Rate").  Additionally, Payors shall pay or reimburse Holder for any and all reasonable costs and expenses, including reasonable attorneys' fees, incurred by Holder in collecting any amounts due under this Note or otherwise enforcing Holder's rights and remedies with respect to this Note.

5.    <u>Cumulative Remedies; Waivers by Payors</u>.  No remedy referred to herein is intended to be exclusive, but each shall be cumulative and in addition to any other remedy above or otherwise available to the Holder at law or in equity.  Payors hereby waives presentment, demand for payment, protest and notice of dishonor of this Note.

6.    <u>Non-Waiver</u>.  Failure to insist on the strict performance of any or all of the terms, provisions, and covenants contained in this Note shall not be construed as a waiver or relinquishment for the future of any term, provision or covenant herein.

7.    <u>**WAIVER OF JURY TRIAL**</u>.  **PAYORS HEREBY WAIVE ANY AND ALL RIGHTS IT MAY HAVE TO A JURY TRIAL IN ANY DISPUTE OR CONTROVERSY ARISING UNDER OR RELATED TO THIS NOTE.**

8.    <u>Prepayment.</u>  Payors may prepay this Note in full or in part, at any time without premium or penalty.  All such partial prepayments shall be applied in the inverse order of maturity so as not to affect the due date and or amount of any subsequent installments due hereunder.  Payors may elect to prepay the entire unpaid principal balance due and owing under this Note, by paying the following amounts:

(a)    Within the First Six Months from the Effective Date:  85% of the remaining Principal balance due under the Note, plus all accrued and unpaid interest and all other sums due under the Note;

(b)     Between the Seventh through Twelfth Month from the Effective Date:  90% of the remaining Principal balance due under the Note, plus all accrued and unpaid interest and other sums due under the Note;

(c)     Between the Thirteenth and Eighteenth Month from the Effective Date:  95% of the remaining Principal balance due under the Note, plus all accrued and unpaid interest and other sums due under the Note;

No prepayment discount on the unpaid Principal Balance shall be allowed (i) for any partial payments of Principal due under the Note; (ii) upon the occurrence of an Event of Default under the Note; or (iii) if any amounts remain due and owing under the Note at any point following the Eighteenth Month from the Effective Date of the Note.

9.     <u>Notices.</u>  All notices, requests, and other communications hereunder shall be in writing and deemed to have been sufficiently given (i) when delivered personally to the recipient, (ii) one (1) business day after being sent to the recipient by reputable overnight courier service (with charges prepaid), (iii) when delivered to the recipient by e-mail or facsimile, in each case with receipt electronically confirmed in writing or acknowledged by the recipient in writing, or (iv) upon receipt or rejection after being mailed to the recipient by certified or registered mail, return receipt requested and postage prepaid, and in each case properly addressed to the intended recipient as set forth below:

If to Holders:     Academy Orthopedics LLC
504 Valley Rd # 201
Wayne, NJ  07470

With a copy to:        Carl J. Soranno, Esq.
                       Brach Eichler LLC
                       101 Eisenhower Parkway
                       Roseland, NJ 07068
                       E-mail: csoranno@bracheichler.com;

        AND
                       Paul DeMartino, Esq.
                       Brach Eichler LLC
                       101 Eisenhower Parkway
                       Roseland, NJ 07068
                       E-mail: pdemartino@bracheichler.com;

If to Payors:          New Jersey Orthopaedic Institute LLC
                       504 Valley Road
                       Ste. 200
                       Wayne, NJ  07470

                       Northlands Orthopaedic Institute LLC
                       504 Valley Road
                       Ste. 200
                       Wayne, NJ  07470

With a copy to:        Steven B. Ravin, Esq.
                       Saul Ewing LLP
                       One Riverfront Plaza
                       1037 Raymond Blvd., Suite 1520
                       Newark, NJ 07102-5426

10.    <u>Governing Law</u>.  This Note shall be governed by and construed in accordance with the laws of the State of New Jersey.  The courts of the State of New Jersey shall have sole and exclusive jurisdiction of any matters or disputes arising under, or relating to, this Note.

**[Remainder of Page Intentionally Left Blank; Signature Page To Follow]**

*Signature Page to Promissory Note*

**IN WITNESS WHEREOF,** Payors have duly executed this Note to be effective as of the day and year first above written.

Signed, sealed and delivered in the
Presence of

_____
Witness

_____
on behalf of New Jersey Orthopaedic Institute LLC

_____
Witness

_____
on behalf of Northlands Orthopaedic Institute LLC

## GUARANTY

**THIS GUARANTY** (this "Guaranty") is made on this 11th day of June, 2025, by **VINCENT McINERNEY, M.D.** (the "Guarantor") to Anthony Festa, M.D., Anthony Scillia, M.D., Craig Wright, M.D., John Callaghan, M.D., Casey Pierce, M.D., and Academy Orthopaedics LLC (collectively, the "Holder"), to induce the Holder to enter into a certain Settlement Agreement (the "Settlement") with the debtors New Jersey Orthopaedic Institute LLC and Northlands Orthopaedic Institute LLC (collectively, the "Debtors") in a Chapter 11 Bankruptcy Proceeding currently pending before the United States Bankruptcy Court for the District of New Jersey, entitled *In re New Jersey Orthopaedic Institute LLC*, Bankruptcy Case No.: 25-11370 and *In re Northlands Orthopaedic Institute LLC*, Bankruptcy Case No.: 25-11372 (the "Bankruptcy"), resolving the disputes between the Debtors, Guarantor, Lisa McInerney and Holder in the Bankruptcy, including those set forth in a certain Adversary Proceeding commenced by the Debtors against Holder within the Bankruptcy entitled *New Jersey Orthopaedic Institute LLC and Northlands Orthopaedic Institute LLC v. Festa*, Adv. No.: 25-01036.

**WHEREAS**, among the Debtors' obligations to the Holder as described in the Settlement, the Debtors have agreed, pursuant to Section 7.1.3. of the Settlement, to enter into a Promissory Note to pay the Holder the sum of $300,000.00, with interest, over a period of thirty (30) months, as more specifically described in the Promissory Note.

**WHEREAS**, Guarantor has acknowledged that the Settlement would not be made without this agreement of guaranty, guarantying Debtors' obligations pursuant to Section 7.1.3 of the Settlement, pursuant to which the Guarantor has agreed as follows:

1.    **Definitions**.  In addition to defined terms set forth elsewhere herein, the following definitions shall apply for the purpose of this Guaranty.

    (a)    "Debtors" shall mean New Jersey Orthopaedic Institute LLC and Northlands Orthopaedic Institute LLC, all and singularly, and any successors thereto.

    (b)    "Event of Default" shall have the same meaning as are ascribed to such terms in the Note.

    (c)    "Promissory Note" and "Note" shall each refer to the $300,000.00 Promissory Note entered and agreed to by the Debtors, pursuant to Section 7.1.3 of the Settlement.

    (d)    "Liability of the Debtors" shall mean all liabilities and obligations, joint or several, now or hereafter existing, due or to become due of the Debtors to Holder with respect to the Promissory Note and/or arising under the Promissory Note.

    (e)    "Obligors" shall mean any Debtors, any Guarantor and any other party or entity which is a surety, endorser or guarantor of the Liability of the Debtors to Holder, or of completion of the Improvements.

2.    The Guarantor absolutely and unconditionally, and jointly and severally, hereby guarantees to Holder the payment of the unpaid Indebtedness owed under the terms of the Note, pursuant to the terms and conditions set forth therein, and hereby expressly and unconditionally

1

waives demand, notice of presentment and non-payment, protest and notice of protest, of the Note, and consents that the time for payment thereof may be extended by Holder without notice to or further consent from the Guarantor. Guarantor further agrees to pay the unpaid principal, interest and other charges due under the Note when due and owing immediately upon an Event of Default (as defined in the Note) of Debtors as to any one or more of the terms and conditions of the Note, it being agreed between the parties hereto that the full Indebtedness when due and owing on said Note shall become due and payable upon acceleration by the Holder in accordance with the terms of the Note.

3.      Any waiver by Holder of an Event of Default of Debtors and any failure on the part of Holder to enforce its rights against Debtors, shall not affect the absolute and unconditional, and joint and several, liability of the Guarantor. Any extensions of time granted by Holder to Debtors, shall not release the Guarantor from his obligations hereunder.

4.      In addition to (but not in limitation of) all of the foregoing provisions, Holder may take any of the following actions (with or without notice to the Guarantor) without affecting the liability of the Guarantor in any way:

a.      recast, extend or modify all or any portion of the Indebtedness;

b.      grant waivers, extensions, renewals or other indulgences under the Note;

c.      modify or amend any of the terms, provisions or agreements contained in the Note;

d.      vary, exchange, release or discharge, wholly or partially, or delay in or abstain from enforcing any guaranty of the Note;

e.      accept partial payment or performance of the Note from the Debtors; or

f.      compromise or make any settlement or other arrangement with the Debtors.

5.      Liability on this Guaranty shall not be conditional or contingent upon the pursuance by Holder or anyone else of whatever remedies it may have against Debtors, nor shall Holder be required to foreclose, exhaust, or in any other way look for the security which it now has or which it may obtain or in the future may acquire. Not in limitation of the generality of the foregoing, the liability of Guarantor hereunder shall remain effective and enforceable even though Debtors' liability under the Note may be unenforceable, or recovery against the Debtors may be barred by a statute of limitations or otherwise, it being further agreed that Guarantor waives any defense arising by reason of any disability or other defense of Debtors or by reason of the cessation from any cause whatsoever of the liability of Debtors.

6.      Liability of the Guarantor hereunder shall be a continuing one and shall extend to any and all notes or other evidences of indebtedness which may be given in extension or renewal of the present obligation by Debtors.

7.      The Guarantor hereby represents and warrants that:

(a)     The Guarantor has no offsets, counterclaims or defenses against the Indebtedness or this Guaranty, and has the legal capacity to enter into this Guaranty and to perform its obligations hereunder;

(b)     This Guaranty constitutes the legal, valid and binding obligation of the

2

BE.16252959.1/ACA028-281497

Guarantor enforceable against it in accordance with its terms;

(c)    There is no action, suit, proceeding, inquiry or investigation, at law or in equity, or before or by any court, public board or body, pending, or within the knowledge of the Guarantor threatened, wherein an unfavorable decision, ruling or finding would adversely affect the validity or enforceability of this Guaranty;

(d)    Neither the execution and delivery of this Guaranty, the consummation of the transactions contemplated hereunder nor the fulfillment of or compliance with the terms and conditions obtained herein is prevented or limited by, or would be prevented or limited by, or conflict with, or breach, the terms, conditions or provisions of any law, rule, regulations, order of any court or governmental agency, or any evidence of indebtedness, agreement or instrument of whatever nature to which the Guarantor (or any company, corporation or other business entity controlled by the Guarantor or affiliated with him) is now a party, or to which the Guarantor or any such entity is bound, or constitutes a default under any of the foregoing.

(e)    The assumption by the Guarantor of its obligations hereunder will result in material benefits to the Guarantor.

8.    Neither this Guaranty nor any other document, certificate or statement furnished to the Holder by or on behalf of the Debtors or the Guarantor contains any untrue statement of a material fact or omits to state a material fact necessary in order to make the statements contained herein and therein not misleading or incomplete.

9.    The Guarantor shall cause the Debtors to fully perform and observe all of the covenants, agreements and obligations of the Debtors under the Note.

10.    If any one or more Events of Default after the applicable cure period shall occur under the Note, then in each case, the Holder shall have all rights and remedies, including, but not limited to, the right to (i) cause all amounts payable hereunder and pursuant to the Note to be immediately due and payable, whereupon the same shall become immediately due and payable under this Guaranty; (ii) take any other action available either in law or in equity to enforce performance or collect any amounts due or thereafter to become due under this Guaranty and exercise all rights and remedies of the Holder thereunder; and (iii) enforce the observance of any of the covenants or obligations of the Guarantor under this Guaranty.

11.    This Guaranty also includes all reasonable attorneys' fees and expenses and disbursements incurred by Holder in the collection or enforcement of payment or performance by Debtors of any obligation of Debtors to Holder, and in the collection or enforcement of payment or performance by Guarantor hereunder.

12.    Any waiver by Holder of any default shall be limited to that particular instance and shall not operate or be deemed to waive any future default or defaults.

13.    This Guaranty shall continue in full effect notwithstanding any insolvency or bankruptcy of the Debtors.

BE.16252959.1/ACA028-281497

14.    The Guarantor hereby consents to all of the terms and provisions of the Note and, as the same may be from time to time amended or modified.  The Guarantor hereby irrevocably waives:

(a)    Notice of acceptance of this Guaranty and notice that the Note has been accepted by the Holder in reliance hereon;

(b)    Notice of any amendment or any change in the terms of the Note or any other present or future agreement relating directly or indirectly thereto;

(c)    Notice of any default under the Note, or any other present or future agreement relating directly or indirectly thereto;

(d)    Demand for performance or observance of and enforcement of any provisions of the Note, or any pursuit or exhaustion of any rights or remedies against the Debtors, or any other obligor who becomes liable in any manner for any of the obligations, and any requirement of diligence or promptness on the part of the Holder in connection therewith;

(e)    Diligence, presentment, protest, notice of dishonor and notice of default in the payment of any amount at any time payable by the Debtors under or in connection with the Note;

(f)    The benefit of any statute of limitations affecting its liability hereunder or the enforcements thereof, and agrees that any payment of any indebtedness or other act which shall toll any statute of limitations applicable thereto shall similarly operate to toll such statute of limitations applicable to Guarantor's liability hereunder; and

(g)    The benefit of laws exempting property from levy or execution.

15.    The parties hereto agree that this Guaranty shall bind and inure to the benefit of his heirs, executors, administrators, successors and assigns.

16.    This Guaranty shall be governed by the substantive law of New Jersey.

17.    When such interpretation is appropriate, all words in the singular used herein shall include the plural, and all words in the masculine shall also mean the feminine, as the case may be.

18.    If any term, provision, covenant or condition hereof should be held by a court of competent jurisdiction to be invalid, void or unenforceable, all other provisions, covenants and conditions hereof not held invalid, void or unenforceable shall continue in full force and effect and shall in no way be affected, impaired or invalidated thereby.

19.    The Guarantor shall make all payments required hereunder, free of any deductions, and without abatement, deduction, or setoff.

20.    Holder's rights and remedies under this Guaranty shall be in addition to all rights of Holder under the Note.  Such remedies may be pursued separately, successively or concurrently at the sole subjective direction of Holder and may be exercised in any order and as often as occasion therefor shall arise.  No act of Holder shall be construed as an election to proceed under any particular provisions of this Guaranty to the exclusion of any other provision of this Guaranty

4

or as an election of remedies to the exclusion of any other remedy which may then or thereafter be available to Holder.  No delay or failure by Holder to exercise any right or remedy under this Guaranty shall be construed to be a waiver of that right or remedy or of any default hereunder. Holder may exercise any one or more of its rights and remedies at its option.

21.    Guarantor hereby consents and submits to the exclusive jurisdiction and venue of the courts of the State of New Jersey and waives all objections which he may have to such jurisdiction and venue.

22.    <u>WAIVER OF TRIAL BY JURY.</u>  GUARANTOR WAIVES ITS RIGHT, TO THE FULLEST EXTENT PERMITTED BY LAW, AND AGREES NOT TO ELECT, A TRIAL BY JURY WITH RESPECT TO ANY ISSUE ARISING OUT OF THIS AGREEMENT, ANY OTHER DOCUMENT, OR THE RELATIONSHIP BETWEEN THE PARTIES AS GUARANTOR AND HOLDER.

23.    The Guarantor has executed this Guaranty Agreement on the day and year first above written.

**IN WITNESS WHEREOF**, this Guaranty has been executed by each of the undersigned as of the day and year first written above.

**[Remainder of Page Intentionally Left Blank; Signature Page To Follow]**

BE.16252959.1/ACA028-281497

*Signature Page to Guaranty*

**WITNESS:**                                          **GUARANTOR:**

_____                    _____
                                                        **VINCENT McINERNEY, M.D.**

## ACKNOWLEDGMENT

**STATE OF** *New Jersey*              )
                                                        ) ss.:
**COUNTY OF** *Passaic*              )

    **I CERTIFY** that on June *11th* 2025, **VINCENT McINERNEY, M.D.** personally came before me and this person acknowledged under oath, to my satisfaction, that:

(a)    he signed and delivered the attached document as the individual named in the attached document; and

(b)    this document was signed and made by him as his voluntary act and deed.



KINGA SKALSKA-DYBAS
NOTARY PUBLIC, STATE OF NEW JERSEY
COMMISSION # 50207727
MY COMMISSION EXPIRES 03/07/2028

BE.16252959.1/ACA028-281497