| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** *Caption in Compliance with D.N.J. LBR 9004-1(b)* **SAUL EWING LLP** Stephen B. Ravin, Esquire Turner N. Falk, Esquire One Riverfront Plaza 1037 Raymond Blvd., Suite 1520 Newark, NJ 07102-5426 Telephone: (973) 286-6714 E-mail:  stephen.ravin@saul.com        turner.falk@saul.com  *Counsel to the Debtors and Debtors in Possession* | |
| In re:  NEW JERSEY ORTHOPAEDIC INSTITUTE LLC, *et al.*,  Debtors.[1] | Chapter 11  Case No. 25-11370 (JKS)  (Jointly Administered) |

**Declaration of Kinga Skalska-Dybas Chief Financial Officer of the Debtors in Support of Confirmation of the Plan**

I, Kinga-Skalska-Dybas, hereby declare as follows:

1.      I am the Chief Financial Officer of the above-captioned debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"). I am generally familiar with the Debtors' day-to-day operations, business and financial affairs, and books and records.

2.      The Debtors filed their combined disclosure statement (the "Disclosure Statement") and plan of reorganization (the "Plan") [D.I. 85] that addresses the claims of all creditors of the Debtors' estates.

---

[1]    The last four digits of Debtor New Jersey Orthopaedic Institute LLC's tax identification number are 3560; the last four digits of Debtor Northlands Orthopaedic Institute LLC's tax identification number are 9828. The location of both Debtors' principal place of business and the Debtors' service address in these Chapter 11 Cases is 504 Valley Road, Suite 200, Wayne NJ 07470.

55670570.2

3.  I submit this declaration in support of the Debtors' request for confirmation of the Plan, as amended June 12, 2025. [2]

**Background**

4.  No request has been made for the appointment of a trustee or examiner, and no official committee of unsecured creditors has been established in this case. The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.  Collectively, the Debtors form an orthopedic and sports medicine practice that provides medical and surgical services to patients. The practice also offers services to numerous local schools, as well as medical coverage during high school football games. As of the Petition Date, the practice had four doctors and one mid-level provider.

6.  On the Petition Date, by way of a verified complaint and application for an order to show cause, the Debtors commenced an adversary proceeding (Adv. Pro. No. 25-01036 (JKS)) against Anthony Festa, M.D., Anthony Scillia, M.D., Craig Wright, M.D., John Callaghan, M.D., Casey Pierce, M.D., and Academy Orthopaedics LLC (collectively, the "Judgment Creditors"), seeking to set aside the Levy (as defined in the *Declaration of Kinga Skalska-Dybas in Support of First Day Relief*, D.I. 7) on the Debtors' bank accounts as a preferential transfer under 11 U.S.C. §§ 547 and 550 and a violation of the automatic stay in order to unfreeze the necessary funds for immediate operations under 11 U.S.C. § 362 (the "Adversary Proceeding"). *See* Adv. Pro. D.I. 1.

7.  On March 13, 2025, the Judgment Creditors filed their *Answer to Adversary Complaint, Affirmative Defenses, Counterclaim and Third Party Complaint* [Adv. Pro. D.I. 17].

---

[2] Capitalized terms not defined herein shall have the meaning ascribed to them in the Plan.

Throughout the course of the Chapter 11 Cases and the Adversary Proceeding, the Debtors and Judgment Creditors have made appearances in an effort to enforce their respective rights.

8. During the course of the Chapter 11 Cases and Adversary Proceeding, the Debtors and Judgment Creditors agreed to confer and negotiate the issues in the Adversary Proceeding as well as potential plan confirmation disputes in the Chapter 11 Cases.

9. Ultimately, the Debtors and Judgment Creditors resolved the issues in connection with the Adversary Proceeding and the Chapter 11 Cases. The Debtors filed a motion for entry of an order pursuant to Fed. R. Bankr. P. 9019(a) for approval of the settlement agreement between the Debtors and the Judgment Creditors, which is scheduled to be heard concurrently with the hearing on confirmation of the Plan.

## The Plan Satisfies 11 U.S.C. § 1129 and Should Be Confirmed

10. Based upon my discussions with the Debtors' advisors it is my understanding that the Plan complies with applicable provisions of the Bankruptcy Code, was proposed in good faith, and the Debtors, acting through their officers and professionals, have conducted themselves in a manner that complies with applicable law in relation to the formulation, negotiation of, and voting on the Plan.

11. I understand that, to confirm the Plan, the Court must find that the Plan satisfies each of the applicable provisions of section 1129 of the Bankruptcy Code by a preponderance of the evidence. As set forth herein, the Debtors' Plan does so and should be confirmed.

12. Section 1129(a)(1) of the Bankruptcy Code requires that a plan of reorganization comply with the applicable provisions of the Bankruptcy Code. Accordingly, the determination of whether the Plan complies with section 1129(a)(1) of the Bankruptcy Code requires an analysis of sections 1122 and 1123 of the Bankruptcy Code.

3

13. Section 1122 of the Bankruptcy Code provides that "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class." 11 U.S.C. § 1122(a). The Plan's classification of Claims and Interests satisfies section 1122 of the Bankruptcy Code because each Class is composed of substantially similar Claims or Interests, respectively, and the Claims and Interests in each separate class differ from those in every other class due to differing legal rights of the Holders of Claims in each separate Class. Accordingly, the Plan fully complies with section 1122 of the Bankruptcy Code.

14. The seven applicable requirements of section 1123(a) of the Bankruptcy Code generally relate to the specification of Claims treatment and classification, the equal treatment of Claims within classes, and the mechanics of implementing a plan. The Plan satisfies each of these requirements.

15. The first three requirements of section 1123(a) are that a plan specify (a) the classification of claims and interests other than certain tax and priority administrative claims, (b) whether such claims and interests are impaired or unimpaired, and (c) the precise nature of their treatment under the plan. *See* 11 U.S.C. § 1123(a)(1)–(3). The Plan sets forth these specifications in detail in satisfaction of sections 1123(a)(1)-(3).

16. The fourth requirement of section 1123(a) is that a plan must "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment." 11 U.S.C. § 1123(a)(4). The Plan meets this requirement because Holders of Allowed Claims or Interests in each Class will receive the same rights and treatment as other Holders of Allowed Claims or Interests within such Holders' respective Class, unless a Holder of an Allowed Claim agrees to less favorable treatment. Accordingly, the Plan satisfies section 1123(a)(4) of the Bankruptcy Code.

17. The fifth requirement of section 1123(a) is that a plan must provide adequate means for its implementation. See 11 U.S.C. § 1123(a)(5). Section 1123(a)(5) specifies that adequate means for implementation of a plan may include, among other things: (a) retention by the debtor of all or part of its property; (b) the transfer of property of the estate to one or more entities; (c) cancellation or modification of any indenture; (d) curing or waiving of any default; (e) amendment of the debtor's charter; or (f) issuance of securities for cash, for property, for existing securities, in exchange for claims or interests, or for any other appropriate purpose. The Plan is a plan of reorganization that provides for the payment of certain claims out of present assets, and for additional incremental payments out of future cash flows. Thus, the Plan satisfies section 1123(a)(5) of the Bankruptcy Code.

18. The sixth requirement of section 1123(a) is that a plan must contemplate a provision in the reorganized debtor's corporate charter, if the debtor is a corporation, that prohibits the issuance of non-voting equity securities or, with respect to preferred stock, adequate provisions for the election of directors upon an event of default. 11 U.S.C. 1123(a)(6). Because the Debtors are not corporations, section 1123(a)(6) does not apply.

19. Section 1123(a)(7) requires that a plan "contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the plan." 11 U.S.C. § 1123(a)(7). The Plan provides that the Debtors' current management will remain in place. The maintenance of existing management is consistent with the interests of creditors and equity holders. Accordingly, the Debtors respectfully submit that the Plan satisfies section 1123(a)(7) of the Bankruptcy Code.

20. Section 1129(a)(2) of the Bankruptcy Code requires the plan proponent to comply with the applicable provisions of the Bankruptcy Code. See 11 U.S.C. § 1129(a)(2). Case law and legislative history indicate this section principally reflects the disclosure and solicitation requirements of section 1125 of the Bankruptcy Code, which prohibits solicitation of plan votes without a court-approved disclosure statement.

21. Section 1125 of the Bankruptcy Code prohibits the solicitation of acceptances or rejections of a plan of reorganization "unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information." 11 U.S.C. § 1125(b). The Debtors satisfied section 1125. Before the Debtors solicited votes on the Plan, the Court approved the Disclosure Statement in accordance with section 1125(a)(1). The Debtors complied with the content and delivery requirements for the Disclosure Statement, thereby satisfying sections 1125(a) and (b) of the Bankruptcy Code. The Debtors also satisfied section 1125(c) of the Bankruptcy Code, which provides that the same disclosure statement must be transmitted to each holder of a claim or interest in a particular class. Here, the Debtors caused the same Court-approved Disclosure Statement to be transmitted to all parties entitled to vote on the Plan.

22. Section 1126 of the Bankruptcy Code provides that only holders of claims and equity interests allowed under section 502 of the Bankruptcy Code in impaired classes that will receive or retain property under a plan on account of such claims or equity interests may vote to accept or reject a plan. See 11 U.S.C. § 1126. As noted above, the Debtors did not solicit votes on the Plan from Class 3, consisting of holders of interests, because that class is unimpaired and thus deemed to accept the Plan.

23. The Debtors will file the required Report of Plan Voting, reflecting the results of the voting process in accordance with section 1126 of the Bankruptcy Code. "A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of [section 1126], that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of [section 1126], that have accepted or rejected such plan." 11 U.S.C. 1126(c). Pursuant to the settlement with the Judgment Creditors, the Judgment Creditors are deemed to vote to accept the Plan on account of their secured and unsecured claims. The accepting votes of the Judgment Creditors are sufficient for Class 1, the secured claims, to accept the Plan. The Debtors believe that the accepting votes of the Judgment Creditors for Classes 2(a) and 2(b), the unsecured claims of each respective Debtor, are also sufficient to cause those classes to accept the Plan. Based on the foregoing, the Debtors submit that the Plan satisfies the requirements of section 1129(a)(2).

24. Section 1129(a)(3) of the Bankruptcy Code requires that a chapter 11 plan be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). Where the plan proponent proposes the plan with the legitimate and honest purpose to reorganize and has a reasonable hope of success, the plan proponent satisfies the good faith requirement of section 1129(a)(3). The Debtors negotiated, developed, and proposed the Plan in good faith in accordance with section 1129(a)(3). Prior to and throughout these Chapter 11 Case, the Debtors engaged in extensive, arm's-length negotiations with the Judgment Creditors and resolved all disputes with them via the Plan and associated settlement agreement. The Debtors submit that the Plan provides the best hope for the largest possible recovery for the Debtors' creditors and other parties in

interest. Accordingly, the Plan and the Debtors' conduct satisfy section 1129(a)(3) of the Bankruptcy Code.

25. Section 1129(a)(4) requires that certain professional fees and expenses paid by the plan proponent, by the debtor, or by a person issuing securities or acquiring property under the plan be subject to approval of the Court as reasonable. See 11 U.S.C. § 1129(a)(4). As set forth in the Plan, all payments made or to be made by the Debtors for services or for costs or expenses in connection with the Chapter 11 Case prior to the Effective Date, including all Professional Fee Claims, are subject to approval of the Court. Accordingly, the Plan fully complies with the requirements of section 1129(a)(4).

26. The Bankruptcy Code requires the plan proponent to disclose the affiliation of any individual proposed to serve as a director or officer of the debtor or a successor to the debtor under the plan. 11 U.S.C. § 1129(a)(5)(A)(i). Section 1129(a)(5)(A)(ii) further requires that the appointment or continuance of such officers and directors be consistent with the interests of creditors and equity security holders and with public policy. 11 U.S.C. § 1129(a)(5)(A)(ii). In addition, section 1129(a)(5)(B) also requires a plan proponent to disclose the identity of any "insider" (as defined by 11 U.S.C. § 101(31)) to be employed or retained by the reorganized debtor and the nature of any compensation for such insider. 11 U.S.C. § 1129(a)(5)(B). Here, the Plan satisfies these provisions because the Plan discloses the identities and affiliations of directors, officers and insiders to be employed or retained by the reorganized Debtors, including as manager and disbursing agent, and their compensation. Accordingly, the Debtors submit that the Plan fully complies with, and satisfies, the requirement of section 1129(a)(5) of the Bankruptcy Code.

27. Section 1129(a)(6) of the Bankruptcy Code permits confirmation only if any regulatory commission that will have jurisdiction over the debtor after confirmation has approved

any rate change provided for in the plan. 11 U.S.C. § 1129(a)(6). No regulatory commission must approve the Debtors' rates charged to customers. Therefore, section 1129(a)(6) of the Bankruptcy Code is inapplicable here.

28. Section 1129(a)(7) of the Bankruptcy Code—the "best interests of creditors" test—requires that, with respect to each impaired class of claims or interests, either: (a) each holder of a claim or interest of such class has accepted the plan; or (b) will receive or retain under the plan property of a value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the debtors liquidated under chapter 7 of the Bankruptcy Code. 11 U.S.C. § 1129(a)(7)(A). The best interests test is generally satisfied by a liquidation analysis demonstrating that an impaired class will receive no less under the plan than under a chapter 7 liquidation. The Plan satisfies section 1129(a)(7) and no party asserts otherwise. The Debtors, with my input and the assistance of their financial advisor, prepared a liquidation analysis estimating potential recoveries under a hypothetical chapter 7 liquidation (the "<u>Liquidation Analysis</u>") attached hereto as **Exhibit A**, and compared the recoveries under the Liquidation Analysis to the recoveries generated under the Plan. As set forth in the Liquidation Analysis, the recoveries provided under the Plan to all holders of Claims and Interests are at least as much as (and, indeed, in many instances, more than) the potential recoveries available in a chapter 7 liquidation. The Debtors would incur extensive chapter 7 trustee fees and fees for a chapter 7 trustee's professionals. The proposed Plan will pay general unsecured creditors 3% of their claims; in a liquidation these same creditors could receive at most 0.77% of their claims, so the Plan provides a recovery nearly four times as great as the liquidation alternative. The Liquidation Analysis assumes that claims and recoveries are identical in chapter 7 and 11, so these increased costs and fees necessitated by a chapter 7 trustee's involvement in the case would merely reduce

the amount distributed to creditors. This assumption may not be accurate; in a chapter 7 the estates would incur rejection damages claims from executory contracts the Debtors are assuming under the Plan. Further, it is likely that the collections of receivables in chapter 7 would be lower than in chapter 11, so the Liquidation Analysis, if anything, overestimates the pro rata recoveries that unsecured creditors would receive in a chapter 7 liquidation. The Liquidation Analysis demonstrates that the Plan satisfies section 1129(a)(7).

29. Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests either accept a plan or be unimpaired under a plan. 11 U.S.C. § 1129(a)(8). As discussed above, Class 1 is deemed to accept the Plan pursuant to the settlement with the Judgment Creditors, the Debtors anticipate that Classes 2(a) and 2(b) will accept the Plan, and Class 3 is deemed to accept the Plan because it is unimpaired. The Plan satisfies the requirements of section 1129(a)(8).

30. Section 1129(a)(9) requires that certain priority claims be paid in full on the effective date of a plan and that the holders of certain other priority claims receive deferred cash payments. In particular, pursuant to section 1129(a)(9)(A) of the Bankruptcy Code, holders of claims of a kind specified in section 507(a)(2) of the Bankruptcy Code—administrative expenses allowed under section 503(b) of the Bankruptcy Code—must receive on the effective date cash equal to the allowed amount of such claims. No party has objected to confirmation on the basis of section 1129(a)(9) of the Bankruptcy Code. The Plan provides that the Priority Tax Claims will be paid in full on the Effective Date, unless those claims are subject to an objection or otherwise resolved. Accordingly, the Plan complies with the requirements of section 1129(a)(9) of the Bankruptcy Code.

31. Section 1129(a)(10) provides that if a class of claims is impaired under a plan, at least one impaired class of claims must accept the plan, excluding acceptance by any insider. 11

U.S.C. § 1129(a)(10). As detailed herein, contingent on the approval of the settlement with the Judgment Creditors, Class 1 is deemed to accept the Plan, exclusive of any acceptances by insiders. Accordingly, the Plan satisfies the requirements of section 1129(a)(10).

32.     Section 1129(a)(11) requires that the Court find that a plan is feasible as a condition precedent to confirmation. Specifically, the Court must determine that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is provided for in the plan. See 11 U.S.C. § 1129(a)(11).

33.     I have worked with the Debtors' financial professionals to produce twelve-month financial projections, attached hereto as **Exhibit B**. These projections include historical cash flow and expense information, and show that the Debtors can pay ordinary go-forward expenses, and the incremental payments under the Plan, out of go-forward cash flow.

34.     The Debtors are also seriously engaged in discussions to affiliate the post-confirmation reorganized Debtors with a large network of health care providers. This potential affiliation agreement is not yet executed, but I have reasonable grounds to believe such an agreement will come into force soon after confirmation. The structure of this deal is entirely positive for the feasibility of the Debtors' Plan. First, the contemplated deal would bring increased billings under the Debtors' in-network billing, and increase the amounts the Debtors could charge insurance companies. This would both increase in-network revenue by far more than the decrease in out-of-network revenue, and make collection thereof more reliable. Second, the contemplated deal would involve the counterparty assuming or paying for many or most of the Debtors' fixed expenses. On net, the contemplated deal would lower the Debtors' costs and increase revenue, ensuring Plan feasibility. Even in the event such a deal does not close quickly, the attached

11

projections, based on current numbers, demonstrate the Plan is feasible. Accordingly, the Plan satisfies the feasibility requirements of section 1129(a)(11).

35. Section 1129(a)(12) of the Bankruptcy Code requires the payment of all fees payable under 28 U.S.C. § 1930. See 11 U.S.C. § 1129(a)(12). The Plan proposes to pay all such fees as they are incurred. Accordingly, the Plan complies with section 1129(a)(12).

36. The Bankruptcy Code requires that all retiree benefits continue post-confirmation at any levels established in accordance with section 1114 of the Bankruptcy Code. 11 U.S.C. § 1129(a)(13). The Plan does not alter the Debtors' provision of retiree benefits. Accordingly, the Plan complies with section 1129(a)(13).

37. Sections 1129(a)(14) and (15) of the Bankruptcy Code apply only to debtors that are individuals and therefore do not apply here. Section 1129(a)(16) of the Bankruptcy Code applies only to debtors that are nonprofit entities or trusts and therefore does not apply here.

38. Section 1129(d) of the Bankruptcy Code provides that "the court may not confirm a plan if the principal purpose of the plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933." See 11 U.S.C. § 1129(d). The purpose of the Plan is to reorganize the Debtors. The purpose of the Plan is not to avoid taxes or the application of section 5 of the Securities Act. Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

39. Section 1129(b)(1) of the Bankruptcy Code provides that if all applicable requirements of section 1129(a) of the Bankruptcy Code are met other than section 1129(a)(8), a plan may be confirmed so long as the requirements set forth in section 1129(b) of the Bankruptcy Code are satisfied. See 11 U.S.C. § 1129(b). To confirm a plan that has not been accepted by all impaired classes (thereby failing to satisfy section 1129(a)(8) of the Bankruptcy Code), the plan

proponent must show that the plan does not "discriminate unfairly" and is "fair and equitable" with respect to the non-accepting impaired classes. See 11 U.S.C. § 1129(b)(1). The Debtors anticipate that all voting classes will accept the Plan and this subsection will thus be inapplicable. However, if the Court determines that the cramdown provisions are applicable, those provisions are also satisfied.

40. The Plan does not discriminate unfairly with respect to the any classes that did not accept the Plan. Although the Bankruptcy Code does not provide a standard for determining when "unfair discrimination" exists, courts typically examine the facts and circumstances of the particular case to make the determination. *See In re 203 N. LaSalle St. Ltd. P'ship.*, 190 B.R. 567, 585 (Bankr. N.D. Ill. 1995), *rev'd on other grounds* Bank of Am., 526 U.S. 434 (1999) (noting "the lack of any clear standard for determining the fairness of a discrimination in the treatment of classes under a Chapter 11 plan" and that "the limits of fairness in this context have not been established."); *see also In re Bowles*, 48 B.R. 502, 507 (Bankr. E.D. Va. 1985) ("[W]hether or not a particular plan does so [unfairly] discriminate is to be determined on a case-by-case basis."); *In re Freymiller Trucking, Inc.*, 190 B.R. 913, 916 (Bankr. W.D. Okla. 1996) (holding that a determination of unfair discrimination requires a court to "consider all aspects of the case and the totality of all the circumstances"). Generally, courts have held that a plan unfairly discriminates in violation of section 1129(b) only if similarly situated claims receive materially different treatment without a reasonable basis for the disparate treatment. *See In re Greate Bay Hotel & Casino, Inc.*, 251 B.R. 213, 228 (Bankr. D.N.J. 2000) (noting that one of the "the hallmarks of the various tests" is "whether there is a reasonable basis for the discrimination. . . . "). A plan does not unfairly discriminate where it provides different treatment to two or more classes that are comprised of

13

dissimilar claims or interests. See *In re Ambanc La Mesa Ltd. P'ship*, 115 F.3d 650, 655 (9th Cir. 1997).

41. Here, secured claims are placed in Class 1 and the general unsecured creditors of each Debtor are placed in Classes 2(a) and 2(b). All creditors in Class 1 will receive identical treatment: the treatment they agreed to in the settlement. Classes 2(a) and 2(b) will each receive 3% pro rata payment, except for the Judgment Creditors, who will receive pro rata payment equivalent to 2.79% of their unsecured claims. All creditors will receive equal treatment, or their agreed-upon treatment inferior to that provided to general unsecured claims. The Plan does not discriminate unfairly.

42. For a plan to be "fair and equitable" with respect to an impaired class of unsecured claims or interests that rejects a plan (or is deemed to reject a plan), the plan must follow the "absolute priority" rule and satisfy the requirements of section 1129(b)(2). 11 U.S.C. § 1129(b)(2)(B)(ii); 11 U.S.C. § 1129(b)(2)(C)(ii); *see also 203 N. LaSalle*, 526 U.S. at 441–42 ("As to a dissenting class of impaired unsecured creditors, such a plan may be found to be 'fair and equitable' only if the allowed value of the claim is to be paid in full, § 1129(b)(2)(B)(i), or, in the alternative, if 'the holder of any claim or interest that is junior to the claims of such [impaired unsecured] class will not receive or retain under the plan on account of such junior claim or interest any property,' § 1129(b)(2)(B)(ii). That latter condition is the core of what is known as the 'absolute priority rule.'"). The Debtors anticipate that there will not be any rejecting class and accordingly, the Court need not apply the absolute priority rule. Nevertheless, the Plan provides that the Debtors' principal Dr. McInerney and his spouse will make transfers or payments with a value in excess of $300,000 in "new value" to perform the settlement with the Judgment Creditors contemplated in the Plan, in exchange for retention of Dr. McInerney's present equity. The

Debtors are only valuable operating entities while they are actively providing services, and their market value otherwise is negligible. As such, the value of retained equity is far lower than the value of the New Value Contribution. The Plan and settlement contemplated therein could not be performed without the New Value Contribution. As such, the Plan is fair and equitable to all classes.

43. Article III.F of the Disclosure Statement and Plan contemplates that, preconfirmation, the Debtors will file a list of all executory contracts and leases they intend to reject. Pursuant to this provision, in the exercise of their business judgment, the Debtors will reject the executory contracts and leases listed on the attached **Exhibit C**, effective as of the date listed thereon.

44. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: July 1, 2025                                    Respectfully submitted,

*/s/ Kinga Skalska-Dybas*
Kinga Skalska-Dybas
Chief Financial Officer