UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Carl J. Soranno, Esq.**
**BRACH EICHLER, L.L.C.**
101 Eisenhower Parkway
Roseland, New Jersey  07068-1067
Tel No.: (973) 403-3139
Fax No.: (973) 618-5539
E-mail:  csoranno@bracheichler.com
*Attorneys for Creditors, Anthony Festa, M.D., Anthony Scillia, M.D., Craig Wright, M.D., John Callaghan, M.D., Casey Pierce, M.D. and Academy Orthopaedics, LLC*

| | |
|---|---|
| **IN RE:**<br><br>**NEW JERSEY ORTHOPAEDIC INSTITUTE LLC**<br><br>    Debtor, | Case No.:    25-11370(JKS)<br><br>Chapter 11<br><br>Hon. John K. Sherwood, U.S.B.J. |
| **IN RE:**<br><br>**NORTHLANDS ORTHOPAEDIC INSTITUTE LLC**<br><br>    Debtor, | Case No.:    25-11372(JKS)<br><br>Chapter 11<br><br>**(Jointly Administered)** |

**LIMITED OBJECTION TO DEBTORS' MOTION FOR A FINAL DECREE (I) CLOSING THE DEBTORS' CHAPTER 11 CASES; AND (II) GRANTING RELATED RELIEF**

**PLEASE TAKE NOTICE** that Creditors Academy Orthopaedics, LLC, Anthony Festa, M.D., Anthony Scillia, M.D., Craig Wright, M.D., John Callaghan, M.D., Casey Pierce, M.D. (collectively, the "Objectors"), by and through their counsel, Brach Eichler LLC, hereby submit this limited objection to the Debtors, New Jersey Orthopaedic Institute, LLC ("NJOI") and Northlands Orthopaedic Institute, LLC's ("NOI") (collectively, the "Debtors") *Motion for Issuance of a Final Decree (I) Closing the Debtors' Chapter 11 Cases; and (II) Granting Related Relief.  [ECF # 118].*

**OBJECTION AND BASIS THEREFOR**

1. The Debtors have sought the entry of a Final Decree, closing these Chapter 11 Cases, having asserted that "the Debtors commenced distributions of money and property under the Plan," and that "[t]he Plan has been substantially consummated." *ECF # 118-2*.

2. While the Debtors have certainly ***commenced*** distributions under the Chapter 11 Plan, confirmed by the Bankruptcy Court on July 16, 2025 *[ECF # 99]*, the Debtors have not made all of the required distributions under the Plan.

3. Specifically, the Debtors' Chapter 11 Plan incorporated the terms and conditions of the Settlement Agreement between the Debtors and the Objectors, which was also approved on July 16, 2025. *[ECF # 100]*. In the event of any inconsistency between the Chapter 11 Plan and the Settlement Agreement, the terms of the Settlement Agreement govern and control the distributions of cash and property under the Plan. *[ECF # 99, ¶ 48]*. Accordingly, for all intents and purposes, the Settlement Agreement between the Debtors and the Academy Creditors was an express part of the Debtors' Chapter 11 Plan.

4. Under Section 7.2.1 of the Settlement Agreement, the Debtors or their principals were required to "cause the entire Shortfall," in the Debtors' Cash Balance Plan "to be paid, so that disbursements could be made post-confirmation.

5. The Settlement Agreement also required that "[o]n the Effective Date," the Debtors' principals were to "transfer cash or assets worth $300,000.00 from Dr. McInerney's portion of the Cash Balance Plan to the [Objectors]." *ECF # 90.4, Section 7.2.1]*.

6. Under the Settlement Agreement, the Debtors were also required to "disburse to the [Objectors] their portion of the Cash Balance Plan," which was to occur on "***the earlier of*** *(*i) the payment of the Shortfall; or (ii) the Effective Date." *[ECF # 90.4, Section 7.2.2]*.

7. Although the Chapter 11 Plan has been confirmed, the Debtors have not received the $300,000.00 payment from Dr. McInerney's portion of the Cash Balance Plan or their own portions of the Cash Balance Plan," which were already required to have been made under the express terms of the Chapter 11 Plans, but have yet to be completed.[1]

8. The Objectors have been advised that the Debtors have taken the steps necessary to winddown the Cash Balance Plan so that disbursements can be made, and that the matter now resides with Merrill Lynch, the custodian of the Cash Balance Plan, to complete the winddown. Notwithstanding the foregoing, and although the Debtors counsel has advised that the Debtors are "winding down the cash balance plan, and completed the documents the plan administrator required for 2005," the Debtors have not expressly stated that "the entire Shortfall" of the Cash Balance Plan has been paid, as required under the Settlement Agreement. The Objectors have requested that the Debtors' certify to this as an expressed condition for the entry of any Final Decree.

9. Additionally, the Objectors have requested modification of the proposed Final Decree Order, to make clear that the Debtors' obligations in Section 7.2.1 and 7.2.2 of the Settlement Agreement have not yet been completed, and that the Final Decree is conditioned upon Debtors' express representation that they will timely respond to all requests for information by the Academy Creditors regarding termination and distributions from the Cash Balance Plan, and that the Debtors complete and return an "Authorization to Release Client Information" to allow the Objectors to make inquiries directly with Merrill Lynch on the status of the winddown and required distributions from the Cash Balance Plan.

---

[1] The Debtors are also obligated to make payments to the Objectors under the terms of a Promissory Note incorporated into the Settlement Agreement (at Section 7.1.3) and Chapter 11 Plan. However, to the extent of a default under the Settlement Agreement, the Courts of the State of New Jersey were provided with jurisdiction to enforce the Promissory Note and Guaranty. The Final Decree should also confirm the jurisdiction of the Courts of the State of New Jersey, solely to enforce the payment obligations set forth in the Promissory Note and Guaranty.

10. Lastly, to the extent a Motion to reopen the Bankruptcy is required as a result of the Debtors' failure to perform its obligations under the Cash Balance Plan, the Objectors respectfully submit that any costs associated with that Motion, including reasonable attorneys fees, should be borne by the Debtors, as an administrative expense under 11 U.S.C. 503(b)(3) and (4).

11. The Objectors have notified the Debtors that they would withdraw their Objection to the Debtors' Motion if these conditions were met. However, absent confirmation by the Debtors that they will address the Objectors concerns as set forth above, the Objectors object to the entry of a Final Decree in this matter, until such time that all distributions required under the Cash Balance Plan have been made.

12. The Objectors understand that upon a contested Motion for the entry of a Final Decree, the Bankruptcy Court will consider such factors as "whether the property proposed by the plan to be transferred has been transferred," and "whether deposits required by the plan have been distributed." *Fed. R. Bank. P. 3022*, Advisory Committee Note (199). See e.g. Walnut Associates v. Saidel, 164 B.R. 487 (E.D. Pa. 1994), (noting that "substantial consummation" of bankruptcy plan occurs upon the "transfer of all or substantially all of the property proposed by the plan to be transferred.)"

13. Until the Debtors confirm the that the entire funding shortfall of the Cash Balance Plan has been paid and make the required distributions from the Cash Balance Plan, the Debtor's Bankruptcy will not be fully administered, absent express and unambiguous confirmation that the Debtors have met their required shortfall, leaving distributions to be nothing more than a ministerial act on the part of Merrill Lynch. If the Debtors cannot provide these assurances to the satisfaction of the Objectors, the Debtors' Motion for Final Decree should be denied at this time.

- 5 -

Dated:　　　September 23, 2025
　　　　　　　Roseland, New Jersey

　　　　　　　　　　　　　　　BRACH EICHLER L.L.C.
　　　　　　　　　　　　　　　Attorneys for Objectors


　　　　　　　　　　　　　　　BY:　/s/ Carl J. Soranno, Esq.
　　　　　　　　　　　　　　　　　　Carl J. Soranno, Esq.